IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 109,355

IN THE MATTER OF A.M.M.-H.

SYLLABUS BY THE COURT

1.

If a juvenile offender subject to extended juvenile jurisdiction is placed on conditional release from his or her juvenile sentence and violates a condition, the violation qualifies as a violation of the juvenile sentence.

2.

Under K.S.A. 2013 Supp. 38-2364(b), when an extended jurisdiction juvenile has violated a condition of his or her sentence, a district judge is permitted to revoke the stay of the adult sentence and execute it. If the juvenile challenges the allegations of a violation and the district judge holds a hearing and finds by the preponderance of the evidence that a violation occurred, revocation of the stay is automatic and the adult sentence is executed unless the State and the defense agree to a modification. If the State prompts a hearing on a motion to revoke based on the allegations of a violation and the district judge finds a violation occurred, the statute is silent. The district judge retains discretion on whether to revoke and order execution of the adult sentence.

Review of the judgment of the Court of Appeals in 49 Kan. App. 2d 647, 312 P.3d 393 (2013). Appeal from Johnson District Court; THOMAS E. FOSTER, judge. Opinion filed August 8, 2014. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed and remanded.

1

*Michael J. Bartee*, of Michael J. Bartee. P.A., of Olathe, argued the cause and was on the brief for appellant.

*Shawn E. Minihan*, assistant district attorney, argued the cause, and *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.:  A.M.M.-H. appeals execution of his adult prison sentence after he violated the terms of conditional release on his juvenile sentence. We accepted his petition for review of the Court of Appeals decision affirming the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

In early 2011, A.M.M.-H. pleaded guilty to one count of aggravated indecent liberties with a minor in violation of K.S.A. 21-3504(a)(3), a severity level 3 person felony, and one count of aggravated intimidation of a witness, K.S.A. 21-3833, a severity level 6 person felony.

A.M.M.-H. was sentenced in an extended juvenile jurisdiction proceeding. In such a proceeding, a juvenile is given both a juvenile sentence and an adult sentence. The adult sentence is stayed pending successful completion of the juvenile sentence. If the juvenile either violates the terms of his juvenile sentence or commits a new offense, the adult sentence may be executed in certain circumstances.

As a violent II juvenile offender under K.S.A. 2010 Supp. 38-2369(a)(1)(B), A.M.M.-H. received 24 months' incarceration and an aftercare term of 24 months. His adult sentence, stayed pending successful completion of his juvenile sentence, was 59 months for the aggravated indecent liberties count and 18 months for the aggravated

2

intimidation of a witness count. The adult sentences were ordered to run concurrently, and the district judge ordered lifetime postrelease.

A.M.M.-H. was placed in the Kansas Juvenile Correctional Complex on April 20, 2011. Because of time already served, he was scheduled to be released in September 2012.

That month, A.M.M.-H. entered into a "Conditional Release Contract," which contained several conditions of release, including attending school; obeying all federal, state, county, and local laws; and contacting his community supervision officer within 48 hours of release. The contract also stated:

> "Any violation of the Conditional Release Contract is a violation of State Law (K.S.A. 38-2375) and may result in court action to extend the terms of your Release Contract and/or to modify the conditions of your Conditional Release Contract, or to return you to the Juvenile Correctional Facility."

A.M.M.-H. also entered into a "Juvenile Intensive Supervision Contract" that contained additional terms of his release to remain in effect until his final discharge from the court. Clause 14 contained the consequences for violating the contract:

> "The Respondent may be placed in confinement at the Juvenile Detention Center (or Adult Detention Center if over the age of 18), placed on House Arrest, or directed to appear in front of the Juvenile Field Services Review Board, if he/she does not comply with the Supervision Contract, Case Supervision Plan, and/or Conditional Release Contract."

Finally, A.M.M.-H. signed a "Formal Acknowledgment of the Conditional Release Contract," which stated that he

"[had] reviewed the court-ordered conditions of my Probation with my Intensive Supervision Officer. This is to acknowledge I fully understand the requirements of the court order and I realize failure to complete any or all of the probation conditions can result in a revocation of probation being brought to the Court's attention."

A permanency hearing for A.M.M.-H. was held on September 17, 2012. The district judge found that he had "been reintegrated and is ordered to follow all conditions of conditional release."

In November, A.M.M.-H.'s brother contacted an Intensive Supervision Officer (ISO) to report that A.M.M.-H. had left home the previous day and failed to return. A bench warrant was issued, and a district magistrate judge ordered A.M.M.-H. to be placed in the custody of the Juvenile Detention Center.

The State filed a motion to revoke A.M.M.-H's juvenile sentence and execute the adult prison sentence. According to the State's motion, A.M.M.-H. had violated the "court-ordered conditions of the juvenile sentence, his juvenile intensive supervision contract" by: (1) failing to notify his ISO within 48 hours of any contact with police, (2) violating his curfew, (3) failing to make payment for his Johnson County Department of Corrections fees and costs, and (4) associating with persons with criminal records and who were known gang members.

District Judge Thomas E. Foster held an evidentiary hearing on the State's motion in January 2013. The judge found that A.M.M.-H. "violated the terms of his Conditional Release Contract" and revoked conditional release. The judge then ordered A.M.M.-H. to serve his adult prison sentence.

A.M.M.-H. argued on appeal to the Court of Appeals that what he characterized as "technical violations" of the terms of his conditional release on his juvenile sentence were not violations of the sentence itself, and thus the district judge was without authority to order execution of the adult prison sentence. A.M.M.-H. relied primarily on the fact that terms of conditional release are imposed by the Juvenile Justice Authority and community corrections officers rather than a district judge.

The State responded that the district judge's sentence included a requirement that A.M.M.-H. follow "'all conditions of conditional release.'"

The Court of Appeals panel agreed with the State, holding that a "juvenile who completes the incarceration portion of a juvenile sentence under . . . extended juvenile jurisdiction proceedings and [who] is granted conditional release may be ordered to serve the adult sentence previously entered by the court if the juvenile violates the provisions of the conditional release under K.S.A. 2012 Supp. 38-2364(b) and K.S.A. 2012 Supp. 38-2369(4)(C)." *In re A.M.M.-H.*, 49 Kan. App. 2d 647, Syl. ¶ 4, 312 P.3d 393 (2013).

DISCUSSION

Issues of statutory interpretation and construction raise questions of law reviewable de novo on appeal. *State v. Frierson*, 298 Kan. 1005, 1010, 319 P.3d 515 (2014). We first

> "'attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. [Citation omitted.] When a statute is plain and unambiguous, an appellate court does not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it. Where there is no ambiguity, the court need not resort to statutory construction. Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or

5

legislative history or other background considerations to construe the legislature's intent. [Citation omitted.]'" *State v. Brooks*, 298 Kan. 672, 685, 317 P.3d 54 (2014) (quoting *State v. Urban,* 291 Kan. 214, 216, 239 P.3d 837 [2010]).

Before addressing the arguments of the parties, it is helpful to briefly outline the underlying statutory framework.

A proceeding under the Juvenile Justice Code (JJC) is commenced when the State files a verified complaint alleging a juvenile to be a juvenile offender. K.S.A. 2013 Supp. 38-2327. A juvenile is presumed to be subject to the JJC unless proved otherwise. K.S.A. 2013 Supp. 38-2304(c).

In a typical juvenile case, "[i]f the court finds that the juvenile committed the offense charged . . . the court shall adjudicate the juvenile to be a juvenile offender and may issue a sentence." K.S.A. 2013 Supp. 38-2356(b). But, at any time before sentencing, the State may file a motion requesting designation of the case as an extended juvenile jurisdiction proceeding. K.S.A. 2013 Supp. 38-2347(a)(3). In general, the burden is on the State to prove the appropriateness of the designation; but, in certain circumstances, such as when the juvenile has already been adjudicated once for a felony, the burden shifts to the juvenile to rebut the designation. K.S.A. 2013 Supp. 38-2347(a)(4).

If the juvenile pleads guilty or is found to be guilty in an extended juvenile jurisdiction proceeding, the court shall:  (1) impose one or more juvenile sentences and (2) impose an adult criminal sentence, which "shall be stayed on the condition that the juvenile offender *not violate the provisions of the juvenile sentence and not commit a new offense.*" (Emphasis added.) K.S.A. 2013 Supp. 38-2364(a)(1)-(2).

6

The juvenile sentences available to the district judge are listed in K.S.A. 2013 Supp. 38-2361(a). They include: "(12) Commit the juvenile directly to the custody of the commissioner [of the Juvenile Justice Authority] for a period of confinement in a juvenile correctional facility and a period of aftercare pursuant to K.S.A. 2013 Supp. 38-2369, and amendments thereto." K.S.A. 2013 Supp. 38-2361(a).

When the juvenile is sentenced to the custody of the commissioner and given a period of aftercare pursuant to K.S.A. 2013 Supp. 38-2361(a)(12), the district judge does not hold a permanency hearing under K.S.A. 2013 Supp. 38-2365 until the juvenile's release from the juvenile correction facility. K.S.A. 2013 Supp. 38-2361(a)(12). The district judge is statutorily required to hold such a hearing within 7 days of the juvenile's release. K.S.A. 2013 Supp. 38-2361(a)(12).

The provisions outlining aftercare and conditional release are contained in K.S.A. 2013 Supp. 38-2374:

"(a) When a juvenile offender has satisfactorily completed the term of incarceration at the juvenile correctional facility to which the juvenile offender was committed or placed, the person in charge of the juvenile correctional facility shall have authority to release the juvenile offender under the appropriate conditions and for a specified period of time. Prior to release from a juvenile correctional facility, the commissioner shall consider any recommendations made by the juvenile offender's community case management officer."

"Conditional release" is defined to mean a "release from a term of commitment in a juvenile correctional facility for an aftercare term . . . under conditions established by the commissioner." K.S.A. 2013 Supp. 38-2302(b).

The limits of the district judge's involvement in setting the terms of conditional release are set forth in subsections (b) and (c) of K.S.A. 2013 Supp. 38-2374. At least 21 days before release, the juvenile correctional facility notifies the committing court of the date of the juvenile's release and the proposed conditions of the release. K.S.A. 2013 Supp. 38-2374(b). After reviewing the proposed conditions of the release, the district judge "may *recommend* modifications or additions to the terms." K.S.A. 2013 Supp. 38-2374(c). Subsection (e) gives the commissioner the authority to request the assistance of the appropriate court to supervise compliance with the conditions of release during conditional release and the authority to require the juvenile's parents to cooperate and participate with the conditional release.

If a juvenile offender who has been conditionally released fails to obey the specified conditions, the State or an officer assigned to supervise the release may inform the committing court of the alleged violation. K.S.A. 2013 Supp. 38-2375. After a hearing to determine if the juvenile has violated the terms, the "court may modify or impose additional conditions of release that the court considers appropriate or order that the juvenile offender be returned to the juvenile correctional facility to serve the conditional release revocation incarceration and aftercare term set by the court pursuant to the placement matrix." K.S.A. 2013 Supp. 38-2375. Upon finding a conditional release violation, the district judge may also:

> "(A) . . . commit the offender directly to a juvenile correctional facility for a minimum term of three months and up to a maximum term of six months. The aftercare term for this offender shall be a minimum of two months and a maximum of six months, or the length of the aftercare originally ordered, whichever is longer.
>
> "(B) Enter one or more of the following orders:

8

(i) Recommend additional conditions be added to those of the existing conditional release.

(ii) Order the offender to serve a period of sanctions pursuant to subsection (f) of K.S.A. 2013 Supp. 38-2361, and amendments thereto.

(iii) Revoke or restrict the juvenile's driving privileges as described in subsection (c) of K.S.A. 2013 Supp. 38-2361, and amendments thereto.

"(C) Discharge the offender from the custody of the commissioner, release the commissioner from further responsibilities in the case and enter any other appropriate orders." K.S.A. 2013 Supp. 38-2369(a)(4).

In an extended jurisdiction juvenile proceeding, as here, there is another possible consequence flowing from a violation of conditions of release on the juvenile sentence. K.S.A. 2013 Supp. 38-2364(b) provides:

"When it appears that a person sentenced as an extended jurisdiction juvenile has *violated one or more conditions of the juvenile sentence* or is alleged to have committed a new offense, the court, without notice, *may revoke* the stay and juvenile sentence and direct that the juvenile offender be immediately taken into custody and delivered to the secretary of corrections . . . . The court shall notify the juvenile offender and such juvenile offender's attorney of record, in writing by personal service . . . of the reasons alleged to exist for revocation of the stay of execution of the adult sentence. If the juvenile offender challenges the reasons, the court shall hold a hearing on the issue at which the juvenile offender is entitled to be heard and represented by counsel. After the hearing, if the court finds by a preponderance of the evidence that the juvenile committed a new offense or *violated one or more conditions of the juvenile's sentence*, the court *shall revoke* the juvenile sentence and order the imposition of the adult sentence previously ordered pursuant to subsection (a)(2) or, upon agreement of the county or district attorney and the juvenile offender's attorney of record, the court may modify the adult sentence previously ordered pursuant to subsection (a)(2). Upon such finding, the

9

juvenile's extended jurisdiction status is terminated, and juvenile court jurisdiction is terminated. The ongoing jurisdiction for any adult sanction, other than the commitment to the department of corrections, is with the adult court. The juvenile offender shall be credited for time served in a juvenile correctional or detention facility on the juvenile sentence as service on any authorized adult sanction." (Emphases added.)

Again, the crux of A.M.M.-H's argument on appeal is that the terms of his conditional release were not a part of his juvenile sentence because they were not imposed by the sentencing judge. Moreover, he argues, the statutes addressing violations of conditional release, K.S.A. 2013 Supp. 38-2375 and K.S.A. 2013 Supp. 38-2369(a)(4), do not include lifting of the stay of the adult sentence as a potential consequence.

The first question we must address is whether the district judge's finding that A.M.M.-H. "violated the terms of his Conditional Release Contract" was equivalent to a finding that he "violated one or more conditions of the juvenile sentence."

The terms of conditional release were not explicitly included in A.M.M.-H.'s sentence, but that sentence did include 24 months of aftercare. By violating the terms of his conditional release, A.M.M.-H violated the terms of his aftercare and thus the provisions of his juvenile sentence. See K.S.A. 2013 Supp. 38-2302(b) (defining "conditional release" as release from juvenile correctional facility for term of aftercare). Neither K.S.A. 2013 Supp. 38-2375 nor K.S.A. 2013 Supp. 38-2369(a)(4), each of which govern violations of conditional release generally, specifically addresses the violation of a conditional release that is a part of an extended jurisdiction juvenile proceeding. The more specific statute here is K.S.A. 2013 Supp. 38-2364(b). See *In re Adoption of H.C.H.*, 297 Kan. 819, 833, 304 P.3d 1271 (2013) (specific statute applicable rather than general statute; specific provision within statute applicable over more general provision within statute).

10

The second question we must answer is whether K.S.A. 2013 Supp. 38-2364(b) makes revocation of the stay of the adult sentence mandatory or within the district court's discretion. Implicit in A.M.M.-H.'s argument is a concern that the terms of the conditional release are beyond the district judge's control and that, once the district judge finds a term of conditional release has been violated, the lifting of the stay is mandatory. Our Court of Appeals has read the applicable statute to require the execution of the adult sentence upon a finding of a violation of the juvenile sentence. See *State v. J.H.*, 40 Kan. App. 2d 643, 646-47, 197 P.3d 467 (2007) (interpreting earlier version of statute invoking substantial competent evidence standard rather than preponderance of evidence standard).

We think K.S.A. 2013 Supp. 38-2364(b) is a bit more nuanced than previously recognized.

The first sentence of the governing statutory subsection is permissive. When an extended jurisdiction juvenile has violated a condition of his or her sentence, a district judge "may revoke" the stay without notice and "direct that the juvenile offender be immediately taken into custody and delivered to the secretary of corrections." Once notice of the allegations supporting revocation are served on the juvenile and the juvenile's attorney of record, the juvenile may challenge the allegations. If no challenge is asserted, the statute is silent. If a challenge is asserted, a hearing is held. After such a hearing, if the district judge finds by a preponderance of the evidence that the juvenile violated a condition of his or her sentence, then the punishment for the violation is no longer permissive. Rather, the district judge "shall revoke" the stay of the adult sentence originally pronounced unless the State and the defense agree to a modification of that sentence. Under the plain language of the statute, the preponderance finding triggers automatic termination of the extended jurisdiction of the juvenile court and endows the adult court with ongoing jurisdiction for any adult sanction other than prison.

11

In short, K.S.A. 2013 Supp. 38-2364(b) requires a mandatory execution of the adult sentence only if the juvenile has requested a hearing and the court has found a violation by a preponderance of the evidence. The statute does not specifically address the situation before us here, where the district judge apparently scheduled a hearing on the State's motion to revoke before the juvenile asserted any challenge to the allegations of violation. We hold that in such a situation, the district judge retains discretion to determine whether a particular violation warrants revocation of the stay of the adult sentence just as he or she does if no notice has been provided to the juvenile at all.

It is an abuse of discretion for a district judge to fail to appreciate that he or she has discretion and then to exercise it. *State v. Horton*, 292 Kan. 437, 440, 254 P.3d 1264 (2011). Because it is unclear from the record on appeal whether Judge Foster knew he had discretion not to execute the adult sentence upon a finding of violation of the terms of A.M.M.-H.'s conditional release, we remand to the district court for reconsideration of the State's motion to revoke.

CONCLUSION

The decision of the Court of Appeals is reversed. The decision of the district court is reversed, and the case is remanded to district court.

MORITZ, J., not participating.

R. SCOTT MCQUIN, District Judge, assigned. [1]

[1]**REPORTER'S NOTE:** District Judge McQuin was appointed to hear case No. 109,355 vice Justice Moritz pursuant to the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution.