The opinion of the court was delivered by Rosen, J.:
*1280 Johnathan L. Riffe contends a sentence of lifetime postrelease supervision would be unconstitutional as applied to him. The district court agreed, and as a result ordered a reduced term of 10 years of postrelease supervision. The Court of Appeals reversed and directed the district court to impose lifetime postrelease supervision. We conclude that the district court made a legal error in its analysis and the Court of Appeals erred when it did not remand the case for consideration under the proper standard. We therefore reverse the Court of Appeals and remand to the district court with directions.
FACTUAL AND PROCEDURAL BACKGROUND
On October 30, 2010, Riffe went to a bar called Grand Slam that was attached to a Ramada hotel. There, he met C.H. Events from that night led to Riffe's conviction of aggravated sexual battery. C.H. and Riffe have different accounts of what occurred. We include both of their accounts and a description of the events that took place after the police became involved.
C.H.'s description
C.H. testified that at some point during the night, she decided she wanted to leave Grand Slam and go home, and Riffe offered to give her a ride. C.H. accepted the ride, and she and Riffe got in his truck and left the bar. C.H. began giving Riffe directions to her house. Riffe eventually stopped following C.H.'s directions and pulled into a parking lot, where he stopped his truck. Riffe dragged C.H. out of the truck by her hair and began ripping C.H.'s clothing off of her. Riffe pinned C.H. against the back of the truck and slammed her head into the tailgate. Riffe then undid his pants and tried to rape C.H. while she scratched and fought him. C.H. eventually kicked Riffe, got away, and began running until she found a motel. C.H. ran into the motel crying for help.
Riffe's description
Riffe testified that C.H. talked and flirted with him throughout the night while the two were at Grand Slam. Riffe and C.H. went outside the bar to the patio and began kissing and "heavy petting," and C.H. told him they should leave together. After trying, unsuccessfully, to enter Riffe's friend's hotel room at the Ramada, Riffe and C.H. got into Riffe's truck, and C.H. began giving him driving directions. C.H. began undressing until she was only wearing a bra and jacket. C.H. indicated that she and Riffe could not go to her house, and Riffe understood this to mean that she lived with her parents.
*1281 Riffe eventually stopped the truck in a parking lot so he could urinate. After he urinated, Riffe walked to the passenger side of the truck and opened the door. C.H. fell out, head first, onto the concrete. Riffe decided C.H. was so intoxicated that he should get her dressed and take her home, so he moved her to the tailgate of the truck to dress her. When Riffe tried to put her underwear on her, C.H. became upset and kicked him. Riffe told C.H. that he had to get her dressed before he took her home, but C.H. started swinging at him and then jumped out of the truck. Riffe sat down on the tailgate to collect himself, and when he got up and walked around the truck, C.H. was gone. Riffe began driving around looking for C.H. When he could not find her, he returned to the bar to ask his friends and C.H.'s friends to help him look for her. When Riffe got to the bar, C.H.'s friends were not there, and his friend was too drunk to help, so Riffe decided to stay at the bar and have a few drinks and wait for someone who knew C.H. Eventually, Riffe decided he was too drunk to drive around looking for C.H. so he returned to the Ramada where he was staying.
After C.H. arrived at the motel
When C.H. arrived at the motel, police were called and officers responded. C.H. had red areas on her neck, marks on her stomach and pant line, and bumps along her hairline. One of the officers located Riffe in the parking lot of the Ramada and observed a woman's shoes and tights on the passenger seat of Riffe's truck. He had earlier located C.H.'s other clothes in the parking lot where Riffe had stopped his truck. Another officer spoke with Riffe and observed a bleeding scratch on Riffe's neck. C.H. eventually arrived at the Ramada and identified Riffe as her attacker.
Riffe was charged with aggravated kidnapping, attempted rape, and aggravated sexual battery. The jury acquitted Riffe of aggravated kidnapping and attempted rape but convicted him of aggravated sexual battery. On September 30, 2011, the district court sentenced Riffe to 47 months of imprisonment and 24 months of postrelease supervision.
On September 17, 2014, the State filed a motion to correct an illegal sentence, arguing that Riffe should have been sentenced to lifetime postrelease supervision pursuant to K.S.A. 2010 Supp. 22-3717(d)(1)(G). Riffe filed a response challenging the constitutionality of lifetime postrelease supervision as applied to him. He argued that the sentence would be cruel and unusual punishment under the Eighth Amendment to the United States Constitution and section 9 of the Kansas Constitution Bill of Rights.
At a resentencing hearing, the parties argued the constitutionality of lifetime postrelease as it applied to Riffe but presented no evidence. After hearing counsel's arguments, the district court concluded that lifetime postrelease supervision was unconstitutional under the Kansas Constitution as applied to Riffe. However, instead of denying the State's motion and leaving in place the originally imposed term of 24 months, the court resentenced Riffe to a period of 10 years' postrelease supervision, deeming that to be the "outer limits of what would constitute punishment that is not constitutionally cruel and unusual and will protect society." In response to the State's request that the district judge elaborate on his factual findings and legal conclusions, the district judge filed the following "Findings of Fact" after concluding the hearing:
"The Defendant following jury trial was convicted of the offense of Aggravated Sexual Battery. The Defendant was found not guilty of the offenses of Aggravated Kidnapping and Attempted Rape. On September 30, 2011, the Defendant was sentenced to the aggravated guidelines sentence of 47 months in the custody of the Secretary of Corrections. The Defendant's motions for durational and dispositional departure were denied and the sentence was served.
"The Defendant was also sentenced to a postrelease term of 24 months. The presentence investigation listed 24 months as the appropriate term of postrelease. The Kansas legislature had previously amended K.S.A. 22-3717 to require lifetime postrelease for convictions of sexually related offenses. Apparently the amendment was *1282 made late in the legislative session not providing time for the amendment to be included in legislative updates to attorneys, judges, and court service offices.
"Presentence reports were prepared erroneously in relation to postrelease for a period of several years without the error being noticed or corrected by either trial judges, attorneys, or court service officers. It appears over the last several years in excess of 800 cases statewide were improperly sentenced without a lifetime postrelease being imposed as required by the amended statute.
"The above captioned matter is one such case. To correct the error, the Defendant was resentenced to correct the illegal sentence on April 27, 2015. Prior to the resentencing the Defendant filed a motion to attack the constitutionally [sic ] of imposing a lifetime postrelease.
"An attack on the constitutionality of lifetime postrelease can be made on either of two grounds, categorically or case specific. Numerous appellate cases have dealt with the categorical constitutional attack and have upheld the constitutionality of 22-3717 on that ground. The court found a lifetime postrelease under the fact specifics of this case would be unconstitutional utilizing the rationale as set out in STATE v. PROCTOR, 47 Kan. App. 2d 889 [280 P.3d 839] (2012) [.] After argument of counsel, the Court resentenced the Defendant to a ten year postrelease indicating the Court's factual findings would be filed of record.
"The Court in no way minimizes the seriousness of the crime of conviction. The Court imposed the aggravated sentence and denied motions for durational and dispositional departure. The sentence was served.
"The Defendant was not convicted by jury of the charged offenses of Aggravated Kidnapping and Attempted Rape. The post release for Aggravated Sexual Battery was increased from two years to life by the amendment of 22-3717. The Defendant would have fallen in a border box on the sentencing grid had it not been for a pair of twenty-two year old convictions for burglary and drugs. Past the age of 18 the Defendant had no felony convictions until the present crime of conviction. He is now in his early to mid 40s being 39 at the time of the commission of the offense.
"Since the commission of the offense the Defendant has gotten married. He has custody of and has raised and is raising two sons from a prior marriage. He has a good work history. The Defendant is required to register as a sex offender. The goal of lifetime postrelease in regard to sexual crimes is to prevent recidivism. The Defendant does not have a history of sex crimes beyond the present crime of conviction. At the time of the offense he was not married, had been working out-of-state and was at a bar prior to the offense. The Defendant had no problems in prison or on postrelease.
"Again, the factors do not mitigate the seriousness of the offense but indicate the Defendant is not a repeat sex offender or an incorrigible recidivist."
The State appealed the district court's decision. The Court of Appeals concluded that lifetime postrelease supervision was constitutional, vacated in part the sentence, and remanded with directions to impose lifetime postrelease supervision. State v. Riffe , No. 113,746, 2016 WL 937869 (Kan. App. 2016) (unpublished opinion). Riffe petitioned for this court's review, arguing that the Court of Appeals erred when it reached the merits of the State's argument because the State failed to comply with Supreme Court Rule 6.02(a)(5) (2018 Kan. S. Ct. R. 34). In the alternative, Riffe argued that the Court of Appeals erred because the panel reweighed evidence, relied on improper factual findings, and addressed an argument that the State had abandoned. We granted Riffe's petition for review.
ANALYSIS
First, we briefly address Riffe's contention that the Court of Appeals should not have reached the merits of the State's argument. Riffe argues that the State failed to comply with Supreme Court Rule 6.02(a)(5) (2018 Kan. S. Ct. R. 35), which provides:
"An appellant's brief must contain the following:
*1283 ....
(5) "The arguments and authorities relied on, separated by issue if there is more than one. Each issue must begin with ... a pinpoint reference to the location in the record on appeal where the issue was raised and ruled on. If the issue was not raised below, there must be an explanation why the issue is properly before the court."
We cannot discern from Riffe's arguments how he believes the State failed to comply with the rule, which requires a party to explain why it is raising a new issue on appeal. Because the State raised no new issues in its appellate brief, we conclude that it adequately preserved its issues for review and conformed to the rule.
Because there is no procedural bar, we move on to the merits of the issue. Riffe contends that the district court properly analyzed the constitutionality of his postrelease supervision term and argues that the Court of Appeals erred when it disagreed and vacated that portion of his sentence.
Section 9 of the Kansas Constitution Bill of Rights prohibits cruel or unusual punishment. "This prohibition includes any punishment that 'although not cruel or unusual in its method ... [is] so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.' " State v. Funk , 301 Kan. 925, 933, 349 P.3d 1230 (2015) (quoting State v. Freeman , 223 Kan. 362, 367, 574 P.2d 950 [1978] ).
Kansas courts consider three factors when analyzing whether a sentence is so disproportionate that it is constitutionally impermissible under section 9 :
"(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;
"(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect; and
"(3) A comparison of the penalty with punishments in other jurisdictions for the same offense." Freeman, 223 Kan. at 367, 574 P.2d 950.
No one factor of the Freeman test controls, and a court must address all three factors in its analysis. State v. Ortega-Cadelan , 287 Kan. 157, 161, 194 P.3d 1195 (2008).
An appellate court reviews the district court's factual findings for substantial competent evidence. It reviews the legal conclusions drawn from those factual findings de novo. Funk , 301 Kan. at 933, 349 P.3d 1230.
Here, the district court acknowledged the three Freeman factors before concluding that the first Freeman factor weighed for Riffe and the second two factors did not apply. Based on this conclusion, the district court ruled in Riffe's favor.
In the Court of Appeals, the State argued that the district court's factual findings were not supported by substantial competent evidence and that the district court made legal errors when it concluded factor one weighed for Riffe and failed to consider the final two factors.
The Court of Appeals panel concluded that most of the district court's factual findings were supported by substantial competent evidence but held that the facts actually indicated that factor one weighed in the State's favor, not Riffe's, as the district court had concluded. Riffe , 2016 WL 937869, at *7, 10. Regarding the second two factors, the panel construed the district court's decisions that the factors did not "apply" as conclusions that those factors weighed for the State. Riffe , 2016 WL 937869, at *10-11. The panel agreed with those conclusions. Because it considered all three factors to weigh in the State's favor, the panel reversed the district court's decision. Riffe , 2016 WL 937869, at *13.
Before this court, Riffe asserts that the panel's decision should be reversed because *1284 it erred in the following ways: by reweighing evidence when analyzing the first Freeman factor; by relying on the fact that the district court imposed an aggravated prison sentence when analyzing the first Freeman factor; and by addressing the second and third Freeman factors when the State did not analyze those factors in its brief.
We agree that the Court of Appeals should be reversed, but we base our decision on slightly different reasoning. We conclude that the district court made insufficient factual findings regarding factor one and made a legal error when it disregarded factors two and three. Based on these errors, the panel should have remanded the case to the district court for consideration under the proper legal standard rather than using its own judgment to fill in the holes created by a deficient trial court record.
When considering the first Freeman factor, a court should make factual findings regarding "[t]he nature of the offense and the character of the offender ... with particular regard to the degree of danger present to society." 223 Kan. at 367, 574 P.2d 950. As we have noted, "relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment." 223 Kan. at 367, 574 P.2d 950.
From the district court's factual findings, it appears the court focused mainly on why it originally imposed the incorrect sentence and very little on Riffe's character and the likelihood that he would reoffend. It is unclear whether the court considered the facts of the crime, its violent or nonviolent nature, Riffe's culpability for the injury, or the many purposes of postrelease supervision-"retribution, deterrence, incapacitation, and rehabilitation." State v. Mossman , 294 Kan. 901, 912, 281 P.3d 153 (2012). These are integral considerations because they speak not only to the degree of danger a defendant may pose to society, but also to the proportionality of the offense as it relates to the crime.
We are cognizant of the fact that we generally presume a district court made the necessary findings to support its conclusion when a party did not object to insufficient findings in the district court. See State v. Longoria , 301 Kan. 489, 506, 343 P.3d 1128 (2015). However, we have also said that we cannot follow that model "[w]hen the record on appeal does not support such a presumption." Progressive Products , Inc . v. Swartz , 292 Kan. 947, 961-62, 258 P.3d 969 (2011). In such a case, we "must remand for additional factual findings and legal conclusions." Progressive Products , 292 Kan. at 962, 258 P.3d 969.
We face that scenario here. The State presented evidence of a violent crime that left a traumatized victim. While the jury did not find Riffe guilty of attempted rape, it did find him guilty of aggravated sexual battery, proving that it believed most of the victim's testimony. And the district judge was clearly aware of the violent nature of the offense-at the resentencing hearing, he stated
"had I tried the case myself to the bench I probably would have found not guilty on the aggravated kidnapping, guilty on the attempted rape and the aggravated sexual battery. Even without Mr. Riffe's prior convictions for the burglary and LSD occurring back in 1989, had there been no prior we would have been dealing with, rather than a presumptive prison case, but a case of safety of the community. The court has no doubt that I would have found that the imposition of the prison sentence was appropriate."
In light of the factual record and the district judge's comments, we cannot presume that the district court made the findings necessary to support its conclusion that the nature of the offense and Riffe's character suggested lifetime postrelease supervision was unconstitutional.
Regarding the final two factors, the district court informed the parties that "[t]he court has dealt with this issue primarily involved with child sex offenses. As to the two factors concerning proportionality and the offense comparted to other offenses in the State of Kansas, the court will find those do not apply." In its findings of fact, the judge described factual findings related to Riffe's *1285 character, but did not discuss factors two or three.
It is clear that the district judge did not conclude that the final two factors weighed for the State, as the Court of Appeals concluded. The language reveals that the district court purposefully disregarded these factors when conducting its analysis.
We have explained many times that a court must consider all three Freeman factors in its analysis. See, e.g., State v. Boleyn , 297 Kan. 610, 629-30, 303 P.3d 680 (2013) ; State v. Britt , 295 Kan. 1018, 1032, 287 P.3d 905 (2012) ; State v. Woodard , 294 Kan. 717, 723, 280 P.3d 203 (2012) ; Ortega-Cadelan , 287 Kan. at 161, 194 P.3d 1195. And all three factors are certainly relevant in this case. Riffe presents no argument as to why the court should not compare his punishment against punishments for more serious offenses and punishments in other jurisdictions for the same offense. We agree with the State's assertion that the district court made a legal error when it considered only one of the Freeman factors in its constitutional analysis.
Given the errors in the courts below, we must remand this case to the district court for the purpose of using the proper legal standard to consider whether lifetime postrelease supervision is unconstitutional under section 9 of the Kansas Constitution Bill of Rights as it applies to Riffe. We direct the district court to look to the record or conduct a new evidentiary hearing, at its discretion, to make new and complete factual findings that are consistent with the guidance provided in Freeman . We note that the Court of Appeals concluded that some of the factual findings were not supported by substantial competent evidence and therefore caution the district court to ensure that its findings are based on the evidence presented by the parties, not the arguments submitted by the attorneys. We further direct the district court to consider all three factors in its analysis.
Reversed and remanded with directions.