IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 127,414

In the Matter of D.J.

SYLLABUS BY THE COURT

1.

If the State proves by a preponderance of the evidence that a juvenile offender committed a new offense or violated at least one condition of the juvenile sentence in an extended jurisdiction juvenile prosecution, the court must revoke the juvenile sentence and impose the original adult sentence. The court may modify the adult sentence only if the parties have agreed on a modification.

2.

The State needs to prove only a single violation of a juvenile sentence in an extended jurisdiction juvenile prosecution to trigger revocation of the juvenile sentence.

3.

Case-specific proportionality challenges under the Eighth Amendment or the Kansas Constitution are inherently factual and, thus, a party generally may not raise one for the first time on appeal.

4.

A party fails to comply with Supreme Court Rule 6.02(a)(5) (2025 Kan. S. Ct. R. at 36) when they address preservation for the first time in a reply brief.

1

5.

A litigant claiming a lawyer's omission amounted to ineffective assistance of counsel must show the omitted issue was meritorious to prevail on their claim.

Appeal from Sedgwick District Court; J. PATRICK WALTERS, judge. Oral argument held May 13, 2025. Opinion filed August 1, 2025. Affirmed.

*Kaitlin M. Dixon*, of Dixon Law Group LLC, of Wichita, argued the cause and was on the briefs for appellant, and *D.J.*, appellant, was on a supplemental brief pro se.

*Lance J. Gillett*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, and *Kris W. Kobach,* attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

ROSEN, J.: On November 24, 2016, someone shot J.S. at a laundromat parking lot in Wichita. J.S. died at the hospital from a gunshot wound to his back. The State charged D.J. with felony murder, aggravated robbery, and possession of marijuana in connection with the killing. It theorized that on that day, D.J. (then 15 years old) and two adults met J.S. in the parking lot to complete a marijuana transaction, they robbed J.S., and D.J. or one of the adults shot J.S. in the process.

The State moved to prosecute D.J. as an adult. D.J. agreed to plead no contest to the charges in exchange for the State amending its motion to prosecute D.J. as an adult to request the case be designated extended jurisdiction juvenile prosecution (EJJP), instead. In the plea agreement, D.J. and the State agreed to recommend an adult sentence of life without parole for 25 years for the felony murder count, the high number in the grid box for the attempted aggravated robbery count, and 12 months' incarceration in the county jail for the marijuana possession count.

The court granted the motion for EJJP designation and accepted D.J.'s plea. On February 13, 2018, it sentenced D.J. to a juvenile correctional facility until he was 22 years, 6 months old, and aftercare until he was 23 years old. For the adult sentence, the court imposed life without parole for 25 years for the felony murder count, 55 months' concurrent imprisonment for the attempted aggravated robbery count, and 6 months in jail for the possession count. In accordance with the statutory procedure for EJJP proceedings, the court stayed the execution of the adult sentence so long as D.J. did not violate any provisions of the juvenile sentence or commit a new offense.

A little over three years later, on October 25, 2021, when D.J. was 20 years old, the State released D.J. from detention on conditional release. D.J. signed a "conditional release contract" that listed the conditions of his release. Per this contract, the State permitted D.J. to serve the rest of his juvenile sentence outside of detention so long as he complied with several terms. These terms included an agreement he would not commit any new offenses and that he would follow a supervision plan that would be monitored by a supervision officer.

Arika Williams was assigned as D.J.'s supervision officer. At a later hearing to revoke D.J.'s juvenile sentence, Williams testified that one of the conditions of D.J.'s supervision plan was that he would "not associate with any juvenile who has been adjudicated as a juvenile offender and/or any adult convicted of a felony" and that he would "avoid persons and/or places of disreputable or harmful character."

On December 14, 2021, about two months after D.J. was placed on conditional release, officers pulled over a car suspected to be involved in a disturbance with a weapon, aggravated assault, and domestic battery. D.J. was a passenger in the car and M.H. and S.M. were also in the car. One of the officers would later testify that he smelled marijuana coming from the car, so he conducted a search. The officer uncovered three

firearms, a bag of what the officer believed to be marijuana in the back seat, and a container of what the officer believed to be marijuana under the seat D.J. was sitting in. The occupants were all arrested.

The next day, the State moved to revoke D.J.'s juvenile sentence and impose his adult sentence. It alleged D.J. had violated the terms of his juvenile sentence because officers had located D.J. in a vehicle that contained "3 firearms, marijuana, Oxycodone, and numerous items of drug paraphernalia" and that "[M.H.], an adjudicated felon, . . . and [S.M.], an adjudicated felon," were also in the vehicle.

Before the court could hold a hearing on the motion, on July 24, 2022, D.J. again encountered law enforcement. An officer testified to the following events: While driving in Wichita, the officer recognized D.J. driving a vehicle. The officer ran D.J.'s name through a record management system and confirmed D.J. did not have a valid driver's license. After D.J. failed to signal 100 feet before taking a right turn, the officer signaled D.J. to pull over. D.J. eventually stopped the vehicle and fled. A foot chase ensued, during which officers yelled at D.J. to stop and D.J. tried to hide in some bushes. Officers were able to catch up with D.J. and take him into custody.

Upon returning to D.J.'s vehicle, the officers observed an odor of marijuana coming from its open door. They searched the vehicle and found rolling papers and "a clear baggy containing a green botanical substance that [the officer] believed to be marijuana" from its look and smell. The officer found a small amount of a green substance under the seat which he also believed to be marijuana. After the officers apprised D.J. of his rights pursuant to *Miranda*, D.J. told them he ran from them "because he was out on bond currently, and also . . . there was marijuana in the vehicle." D.J. told the officer the marijuana was his, and the officer placed D.J. under arrest.

4

On September 2, 2022, the State amended its motion to revoke to add allegations that D.J. had again violated the conditions of his juvenile sentence, stating: "Respondent was stopped on July 24th, 2022 by Wichita Police Department Officers . . . and taken into custody for Possession of Marijuana, Interference with LEO/Obstruct, No Valid Driver's license, Fail to signal, and obedience to police."

The court held a hearing on the motion on December 11, 2023. The State argued D.J. had violated the conditions of his juvenile sentence that he obey all laws and that he not associate with adjudicated felons.

D.J.'s counsel argued the court should find D.J. had not violated the terms of his sentence and continue the stay of the adult sentence.

The court ruled for the State, revoked the juvenile sentence, and imposed the original adult sentence.

D.J. timely appealed to this court. This court granted D.J. leave to file a pro se appellate brief alongside the brief his counsel has filed.

ANALYSIS

*Substantial competent evidence supports the revocation of the juvenile sentence.*

D.J. argues that the evidence did not support the district court's finding he violated the conditions of his juvenile sentence. He urges us to vacate the district court decision revoking the juvenile sentence and imposing the adult sentence. We affirm the district court.

5

We review a district court's finding that a juvenile offender violated a condition of their juvenile sentence in an EJJP for substantial competent evidence. *In re E.J.D.*, 301 Kan. 790, 794, 348 P.3d 512 (2015). "Substantial evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *State v. Talkington*, 301 Kan. 453, 461, 345 P.3d 258 (2015)." *In re A.D.T.*, 306 Kan. 545, 550-51, 394 P.3d 1170 (2017).

When a juvenile case is designated EJJP, the juvenile receives a juvenile sentence and an adult sentence. K.S.A. 38-2364(a). The adult sentence is stayed "on the condition that the juvenile offender substantially comply with the provisions of the juvenile sentence and not commit a new offense." K.S.A. 38-2364(a)(1). But if the State proves by a preponderance of the evidence that the juvenile committed a new offense or violated at least one condition in the juvenile sentence, the court must revoke the juvenile sentence. K.S.A. 38-2364(b); *In re J.P.*, 311 Kan. 685, 687, 466 P.3d 454 (2020) (if State requests revocation of juvenile sentence and establishes a violation, K.S.A. 38-2364[b] "requires the court to do it"). It must then impose the original adult sentence unless the parties have agreed on a modification. K.S.A. 38-2364(b); *In re E.J.D.*, 301 Kan. at 793-94.

In this case, the State alleged D.J. violated the conditions of his juvenile sentence that he refrain from committing new offenses and that he "not associate with any juvenile who has been adjudicated as a juvenile offender and/or any adult convicted of a felony," and "avoid persons and/or places of disreputable or harmful character." The district court held the State had "proved their case by a preponderance of the evidence." D.J. argues the evidence does not support a finding that he violated any of these conditions.

In support of the allegation D.J. committed new offenses, an officer testified that on December 14, he found D.J. in a vehicle that contained three firearms and a botanical substance he believed to be marijuana. Another officer testified that on July 24, D.J. ran

6

and hid when the officer told him to stop, that the officer found marijuana in the car D.J. was driving, and that D.J. admitted it was his.

This was sufficient to support the district court's finding that D.J. committed new offenses. D.J. was legally barred from possessing a firearm, and both marijuana possession and eluding officers are crimes in Kansas. See K.S.A. 21-6304(a)(2), (3)(A)(ii) (juvenile adjudicated offender for felony murder may not possess firearms); K.S.A. 21-5706(b) (criminalizing marijuana possession); K.S.A. 21-5904(a)(4) (criminalizing knowingly fleeing from law enforcement). The officers' testimony equated to "legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion" that D.J. possessed a firearm, possessed marijuana, and eluded officers. See *In re A.D.T.*, 306 Kan. 545, 551, 394 P.3d 1170 (2017) (defining substantial competent evidence).

D.J. insists this testimony was not enough. First, he points out that he informed his supervision officer he had contact with law enforcement, and this "does not suggest any willful or intentional violation of the terms of his release." Furthermore, he argues, arrest alone is not substantial competent evidence he failed to obey the law. D.J. also argues that, in the absence of field testing, there was not enough evidence to establish the botanical substance located in the car he was driving on July 24 was marijuana. He further argues there is no evidence showing the marijuana was his and that it had not been left in the car by a previous occupant.

D.J.'s arguments fail to undercut the evidence supporting the district court's findings. Reporting contact with law enforcement does not negate a violation of the law. And while we agree that arrest alone cannot show by a preponderance of the evidence that someone violated the law, the facts leading to the arrest can, as they do here. Finally, as the State argues, field testing is not the only way to establish the identity of a drug; we

7

have held that circumstantial evidence may suffice. See *State v. Brazzle*, 311 Kan. 754, Syl. ¶ 4, 466 P.3d 1195 (2020) ("Proof of the identity of a substance by circumstantial evidence may be sufficient to affirm a conviction in a drug prosecution even if no scientific test results are admitted or available."). Here, officer testimony that D.J.'s vehicle was emitting "a strong odor of marijuana," that he saw rolling papers and marijuana in the car, and that D.J. admitted he had marijuana in the car established by a preponderance of the evidence that D.J. possessed marijuana.

The parties spar over whether the evidence was strong enough to also support findings that D.J. was driving without a license and that he violated the condition not to associate with adjudicated offenders or convicted felons. We need not wade through these arguments because a single violation of a juvenile sentence supports its revocation in an EJJP. There was substantial competent evidence D.J. violated his sentence by possessing firearms and marijuana and by eluding law enforcement. See K.S.A. 38-2364(b) ("if the court finds by a preponderance of the evidence that the juvenile committed a new offense or violated *one* or more conditions . . . the court shall revoke the juvenile sentence") (Emphasis added.); *In re J.P.*, 311 Kan. at 687. We affirm the district court's finding that D.J. violated his juvenile sentence.

*The district court correctly applied K.S.A. 38-2364 when it imposed the adult sentence after revoking the juvenile sentence.*

In his first pro se issue, D.J. argues that the district court abused its discretion in concluding K.S.A. 38-2364 required the court to impose his adult sentence after finding D.J. had violated conditions of the juvenile sentence. He argues the court had discretion to continue the stay of the adult sentence, citing *In re A.M.M.-H.*, 300 Kan. 532, 331 P.3d 775 (2014).

*Preservation*

D.J. did not preserve the issue below. He argues this court can review it for the first time on appeal because it is a pure question of law that is determinative of the case and its consideration is necessary to serve the ends of justice or preserve the denial of fundamental rights. See *State v. Harris*, 311 Kan. 371, 375, 461 P.3d 48 (2020) (listing preservation exceptions).

We apply these exceptions to reach his issue because it is indeed a question of law and, if he is correct, it could settle the appeal. See *State v. Gulley*, 315 Kan. 86, 99, 505 P.3d 354 (2022) (reviewing unpreserved claim when it was "a question of law that requires no new fact-finding for its resolution"). Furthermore, addressing this issue could serve the ends of justice by ensuring a young offender had every chance permitted by law to avoid the deprivation of his liberty for at least 25 years.

*Merits*

D.J. asserts that *In re A.M.M.-H.*, 300 Kan. 532, Syl. ¶ 2, held that K.S.A. 38-2364 gives a district court discretion in deciding whether to revoke a juvenile sentence and impose an adult sentence in an EJJP after a violation of the juvenile sentence.

The State correctly points out that *In re A.M.M.-H.* interpreted a previous version of K.S.A. 38-2364 and is not relevant to what occurred here. Before it was amended in 2016, K.S.A. 38-2364 provided: "When it appears that a person sentenced as an extended jurisdiction juvenile has violated one or more conditions of the juvenile sentence or is alleged to have committed a new offense, the court, without notice, *may revoke* the stay and juvenile sentence . . . ." (Emphasis added.) The statute *required* the court to revoke the juvenile sentence and impose the adult sentence *only* if the juvenile

9

requested a hearing and the court found a violation at that hearing. This court interpreted this language to give the court discretion whether to revoke the juvenile sentence and impose an adult sentence upon an apparent violation and in the case that a juvenile never challenged the alleged violation. *In re A.M.M.-H.*, 300 Kan. at 540.

The Legislature amended K.S.A. 38-2364 in 2016 to remove the language upon which this court relied on *In re A.M.M.-H.* Now, when the State alleges a violation, the statute requires the court to notify the juvenile and hold a hearing regardless of whether the juvenile challenges the allegations. K.S.A. 38-2364(b). After the hearing, if the court finds a violation, it must revoke the juvenile sentence and impose the adult sentence. K.S.A. 38-2364(b); *In re J.P.*, 311 Kan. at 687. Because the court here found by a preponderance of the evidence that D.J. had violated his juvenile sentence, it had no discretion in revoking the juvenile sentence and imposing the adult sentence.

*The district court correctly interpreted K.S.A. 38-2364 in holding it had no discretion to modify the adult sentence.*

In his next pro se issue, D.J. argues for the first time on appeal that the district court abused its discretion in concluding it could not modify the adult sentence unless D.J. and the State agreed to a modification.

*Preservation*

D.J. argues this court can review his unpreserved argument because it is a question of law that is finally determinative of the case. We apply the exception for the same reason as discussed above. See *Gulley*, 315 Kan. at 99 (reviewing unpreserved claim when it was "a question of law that requires no new fact-finding for its resolution").

10

*Merits*

D.J. argues that upon finding a violation of the juvenile sentence, the district court could have imposed any of the dispositions in K.S.A. 22-3716. This statute describes the procedure and possible dispositions for "violation[s] of any of the conditions of release" "during probation, assignment to a community correctional services program, suspension of sentence or . . . a nonprison sanction." K.S.A. 22-3716(a). One of the possible dispositions when the original crime was a felony is "continuation or modification of the release conditions of the probation, assignment to a community correctional services program, suspension of sentence or nonprison sanction." K.S.A. 22-3716(c)(1)(A). D.J. contends the district court made a legal error when it did not consider this disposition as an option in this case.

The State argues K.S.A. 22-3716 is inapplicable because it is part of the criminal code and thus has no bearing on what happens upon the violation of a juvenile sentence in an EJJP. The State is correct. K.S.A. 38-2364 governs EJJP sentences and violations of those sentences, not K.S.A. 22-3716. See *State v. Turner*, 293 Kan. 1085, Syl. ¶ 2, 272 P.3d 19 (2012) ("Statutes complete in themselves, relating to a specific subject, take precedence over general statutes or over other statutes that deal only incidentally with the same question.").

Per K.S.A. 38-2364, upon finding a violation of the juvenile sentence, the court here was required to revoke that juvenile sentence, impose the adult sentence, and transfer the case to adult criminal court. At that point, D.J. stood convicted of felony murder and subject to a hard 25 sentence. K.S.A. 22-3716, which governs violations of adult *nonprison* sanctions, was still inapplicable to D.J.'s prison sentence. The district court made no error when it imposed the original adult sentence.

11

*Constitutional proportionality claims*

Through counsel, D.J. argues for the first time on appeal that the imposition of his adult sentence was cruel and unusual punishment. He presents a case-specific proportionality claim under the Eighth Amendment to the United States Constitution and section 9 of the Kansas Constitution Bill of Rights and a categorical proportionality claim under the Eighth Amendment. We begin with a discussion of relevant law.

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. This includes sentences that are disproportionate to the offense or to the offender. *Gulley*, 315 Kan. at 99. Similarly, section 9 of the Kansas Constitution Bill of Rights prohibits the imposition of "cruel or unusual punishment," and "[t]his prohibition includes any punishment that 'although not cruel or unusual in its method . . . [is] so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.'" *State v. Riffe*, 308 Kan. 103, 108-09, 418 P.3d 1278 (2018) (quoting *State v. Funk*, 301 Kan. 925, 933, 349 P.3d 1230 [2015]).

In challenging a sentence as disproportionate, a litigant may advance a case-specific challenge or a categorical challenge. A case-specific challenge alleges a punishment is disproportionate to the offense or offender in that case based on the specific facts. Its resolution requires factual findings in the district court and, generally, may not be presented for the first time on appeal. *State v. Dull*, 302 Kan. 32, 38, 351 P.3d 641 (2015); *State v. Patterson*, 311 Kan. 59, 72, 455 P.3d 792 (2020) (declining to review case-specific Eighth Amendment claim for the first time on appeal when challenger failed to show why their case was an exception to general rule that such challenges may not be raised for first time on appeal); *State v. Cervantes-Puentes*, 297 Kan. 560, 565, 303 P.3d

258 (2013) (declining to review case-specific section 9 challenge when party did not ensure adequate factual findings in the district court).

A categorical challenge alleges that a punishment is always disproportionate to a broad category of offenses or offenders, regardless of particular facts. This kind of challenge is not case specific but a question of law and, therefore, an appellate court may consider the claim for the first time on appeal under some circumstances. See *Dull*, 302 Kan. at 39; *Patterson*, 311 Kan. at 72 (reviewing unpreserved categorical challenge that is only a question of law).

*Case-specific challenge*

D.J. argues that the mandatory imposition of his hard 25 sentence was unconstitutional under both the Eighth Amendment and section 9 of the Kansas Constitution Bill of Rights because such a harsh sentence was disproportionate to the facts of this case. He points out he was only 15 at the time of the original crime and asserts that he was not the shooter and has largely complied with the conditions of his juvenile sentence. He argues that other jurisdictions give courts more discretion before imposing a lengthy adult sentence upon revoking a juvenile sentence in an EJJP-style proceeding.

We need not venture any further into D.J.'s claim. We have repeatedly explained that case-specific challenges are inherently factual and, consequently, have held they generally may not be raised for the first time on appeal. *Patterson*, 311 Kan. at 72; *State v. Cervantes-Puentes*, 297 Kan. 560, 565, 303 P.3d 258 (2013) (citing cases).

D.J. insists his case is different because the facts relevant to his challenge are established by the record, so this court should apply a preservation exception and consider his claim.

We disagree. The State contests many of the factual allegations upon which D.J. relies, like whether D.J. was the shooter in the original crime. We cannot settle these disputes on appeal, especially in light of D.J.'s no contest plea. Even if we could resolve D.J.'s factual assertions in his favor, we would not entertain this case-specific challenge because the State had no opportunity to develop a factual record supporting its opposing position. See *Patterson*, 311 Kan. at 72 ("addressing [a case-specific proportionality] issue for the first time on appeal deprives the State of the opportunity to develop a record").

Because D.J. fails to show that "his case is an exception to the general rule that case-specific challenges may not be raised for the first time on appeal," his claim fails. See *Patterson*, 311 Kan. at 72.

*Categorical proportionality claim*

D.J. also presents a categorical argument, claiming that the mandatory imposition of a lengthy sentence is always disproportionate to the broad category of offenders to which he belongs. The "broad" category he describes includes juvenile offenders prosecuted under EJJP-style proceedings who were very young when they committed the original offense, had a low level of culpability, and were largely compliant with their juvenile sentences. Notably, he does not litigate the proportionality of the sentence he received but instead attacks the sentencing *process* dictated in K.S.A. 38-2364(b). According to D.J., *requiring* the district court to revoke a juvenile sentence and impose

the original adult sentence without leaving room for discretion is "disproportionate" to the category of offenders he names.

We question whether D.J. has asserted a true categorical proportionality analysis in attacking a sentencing process rather than the sentence itself and in defining an exceptionally narrow class of offenders. See *Miller v. Alabama*, 567 U.S. 460, 483, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012) (casting doubt on traditional categorical proportionality analysis when litigant challenged mandatory sentencing process rather than actual sentence); *Patterson*, 311 Kan. at 73 (litigant fails to frame valid categorical challenge when named class of offenders is too narrow). But we need not answer these questions today, because D.J. has failed to preserve his challenge for our review.

While we can consider categorical claims for the first time on appeal in some circumstances, we do not do so here because D.J. did not comply with the requirements of Supreme Court Rule 6.02(a)(5) (2025 Kan. S. Ct. R. at 36). When D.J. presented his categorical claim in his appellate brief, he failed to explain where the issue was preserved below or why we should apply a preservation exception, as required by Rule 6.02(a)(5). See Supreme Court Rule 6.02(a)(5) (appellate brief must contain record cite to where issue was raised and ruled on below or, if it was not, explanation why the issue is properly before the court).

The State pointed out this omission in its brief, arguing that D.J.'s omission was fatal to his claim.

D.J. responded in a reply brief, asserting for the first time that this court should review his unpreserved claim because it is a question of law that is finally determinative of the case.

15

Ww reject D.J.'s attempt to cure the deficiency in a reply brief. When a lawyer fails to discuss preservation in their opening brief, they fail to comply with Rule 6.02(a). *Schutt v. Foster*, 321 Kan.\_\_, Syl. ¶ 2, \_\_P.3d\_\_ (No. 126,555 filed July 25, 2025). Due to this preservation error, we do not review D.J.'s categorical proportionality argument.

D.J.'s constitutional proportionality claims fail.

*Ineffective assistance of counsel*

In his final argument, D.J. claims that his counsel at the revocation hearing was ineffective because he failed to present a case-specific proportionality challenge to his sentence. D.J. urges us to therefore reverse the district court order revoking his juvenile sentence and imposing the adult sentence.

Generally, we do not review claims of ineffective assistance of counsel unless the district court has held a hearing and ruled on the claim. *State v. Zongker*, 319 Kan. 411, 431, 555 P.3d 698 (2024). Instead, when a party argues for the first time on appeal that counsel in the lower court was ineffective, "'[t]he usual course is a request by appellate counsel for remand to the district court for an evidentiary hearing on the ineffective assistance claim, commonly called a "*Van Cleave* hearing."'" *Zongker*, 319 Kan. at 431 (quoting *State v. Hilyard*, 316 Kan. 326, 338, 515 P.3d 267 [2022]).

D.J. has not requested remand for a *Van Cleave* hearing, either in his briefing or at oral argument. We have ruled that, "[w]hen no *Van Cleave* hearing is requested, we need not order one sua sponte." *Zongker*, 319 Kan. at 431.

It is sometimes possible for an appellate court to review an ineffective assistance of counsel claim without a *Van Cleave* hearing "'when the merit or lack of merit of an

16

ineffectiveness claim about trial counsel is obvious.'" *Zongker*, 319 Kan. at 431 (quoting *Dull*, 298 Kan. at 839). But "these circumstances are 'extremely rare.'" *Zongker*, 319 Kan. at 431 (quoting *Dull*, 298 Kan. at 839).

D.J. insists we can review his ineffective assistance of counsel claim without remanding for a hearing. He argues his trial counsel was deficient as a matter of law when they did not assert a case-specific proportionality challenge because this prevented him from raising it on appeal. He claims the record shows the failure was prejudicial because the district judge described the mandatory hard 25 as "harsh," and "unforgiving," indicating they would have ruled in D.J.'s favor had the claim been presented.

D.J.'s arguments miss the mark. To show counsel was ineffective, D.J. must show (1) counsel's performance was deficient, i.e. it fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the result below, i.e. there is a "'reasonable probability that the deficient performance affected the outcome of the proceedings, based on the totality of the evidence.'" *State v. Guebara*, 318 Kan. 458, 476, 544 P.3d 794 (2024) (quoting *Khalil-Alsalaami v. State*, 313 Kan. 472, 485-86, 486 P.3d 1216 [2021]).

We explained in *Khalil-Alsalaami* that a litigant claiming ineffective assistance of counsel based on a lawyer's omission faces a unique hurdle in establishing these two prongs. 313 Kan. at 472-73. In such a case, the litigant must prove that the issue the lawyer failed to pursue would have been meritorious. This is because, if the omitted issue "is not meritorious, then trial counsel's failure to litigate [it] cannot be characterized as objectively unreasonable" and its "omission cannot be prejudicial." 313 Kan. at 499-500.

The same principle applies here. We have explained that we cannot evaluate D.J.'s case-specific proportionality claim in the absence of factual development in the district

17

court. And if we cannot assess the merits of the claim, we cannot begin to discern whether its absence was unreasonable or prejudicial.

Because D.J. fails to show that his case is one of those rare instances when we can evaluate whether counsel was ineffective based on the record alone, we decline review of his claim. See *Zongker*, 319 Kan. at 432 (declining review of unpreserved ineffective assistance of counsel claim).

We affirm the district court.

WILSON, J., not participating.