NOT DESIGNATED FOR PUBLICATION

No. 121,546

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

A.D.T.,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; DELIA M. YORK, judge. Opinion filed December 23, 2020. Affirmed in part, reversed in part, and remanded with directions.

*Jean K. Gilles Phillips*, of Paul E. Wilson Project for Innocence and Post-Conviction Remedies, University of Kansas School of Law, for appellant.

*Darrell L. Smith*, deputy district attorney, *Mark A. Dupree Sr*., district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., MALONE, J., and MCANANY, S.J.

PER CURIAM: In 2009, A.D.T. pled guilty to first-degree premeditated murder in an extended jurisdiction juvenile prosecution (EJJP). The district court imposed both a juvenile sentence and an adult sentence. After serving time at a juvenile correctional facility, A.D.T. violated his conditional release by twice testing positive for drugs. The district court revoked A.D.T.'s juvenile sentence and imposed his adult sentence of life imprisonment without the possibility of parole for 25 years (hard 25). A.D.T. appealed, but the Kansas Supreme Court affirmed the revocation.

1

In 2018, A.D.T. filed a K.S.A. 60-1507 motion, alleging ineffective assistance of counsel based on his counsel's performance at the revocation hearing and on appeal before the Kansas Supreme Court. After extensive briefing and an evidentiary hearing, the district court denied the motion.

On appeal, A.D.T. claims he was denied his constitutional right of effective assistance of counsel on five grounds: (1) counsel failed to argue that, as applied in this case, a hard 25 life sentence violated the Eighth Amendment to the United States Constitution and § 9 of the Kansas Constitution Bill of Rights; (2) counsel failed to argue that failure to provided substance abuse treatment to A.D.T. violated the Eighth Amendment to the United States Constitution and § 9 of the Kansas Constitution Bill of Rights; (3) counsel failed to argue that the failure to provide substance abuse treatment to A.D.T. and provide him with accurate notice as to what conduct would revoke his juvenile sentence violated procedural due process of the Fourteenth Amendment to the United States Constitution; (4) counsel failed to argue that, as applied to this case, the imposition of a hard 25 life sentence violated substantive due process rights of the Fourteenth Amendment to the United States Constitution; and (5) counsel failed to argue that the 2016 amendment to K.S.A. 38-2364 applied to A.D.T.'s pending case on appeal. We find that A.D.T. is entitled to relief only on his last claim, so we affirm in part, reverse in part, and remand the case to the district court for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

The factual background of A.D.T.'s case was summarized by the Kansas Supreme Court during A.D.T.'s appeal from the revocation of his juvenile sentence:

"In April 2008, the State commenced a proceeding under the Revised Kansas Juvenile Justice Code, K.S.A. 2007 Supp. 38-2301 *et seq.*, charging 13-year-old A.D.T. with first-degree premeditated murder and criminal possession of a firearm. District

2

Judge Wesley K. Griffin designated the proceedings as an EJJP under K.S.A. 2007 Supp. 38-2347(f)(2).

"In November 2009, A.D.T. pleaded guilty to first-degree premeditated murder. The district court sentenced A.D.T., as a violent I juvenile offender under K.S.A. 2007 Supp. 38-2369(a)(1)(A), to the juvenile correctional facility until age 22 1/2 years old and a term of aftercare until his 23rd birthday. The court also ordered that A.D.T. undergo a substance abuse evaluation and follow any recommendations. For A.D.T.'s adult sentence, which would be statutorily stayed conditioned upon successful completion of the juvenile sentence, the court ordered a life sentence without the possibility of parole for 25 years.

"A.D.T. arrived at the Kansas Juvenile Correctional Complex (KJCC) in December 2009. Because of time already served, A.D.T. was scheduled to be released in July 2013.

"KJCC staff completed a program plan and progress report addressing A.D.T.'s substance abuse assessment during his incarceration. A.D.T.'s test results on the Substance Abuse Subtle Screening Inventory (SASSI) indicated a 'low probability' for substance abuse or dependence disorder. But because A.D.T. self-reported past drug use and admitted to using drugs during the commission of his crime, the report recommended that A.D.T. be referred to the Pathways substance abuse program. A.D.T. remained on the waiting list for Pathways throughout his juvenile incarceration. The final update in the report clarified, 'Due to time constraints, lack of counselors/programming, youth education credits interfering with programming time, and [A.D.T.'s] low [Youth Level of Service (YLS)] scores[,] [A.D.T.] will not complete substance abuse treatment at KJCC before his July 19, 2013[,] release date.' The report recommended that A.D.T. attend community support systems such as Narcotics Anonymous (NA) and Alcoholics Anonymous (AA) upon his release and submit to random UA tests. In addition, if A.D.T. was found to be using substances on release, he was to be assessed for substance abuse and follow any outpatient treatment recommendations.

"Upon A.D.T.'s release in July 2013, the district court found that A.D.T. had been reintegrated and could be returned home. The permanency plan order noted that the district court's previous orders 'shall continue in full force and effect.'

"That same month, A.D.T. entered into a contract explaining the conditions of his release while under community corrections supervision and the sanctions for any violation. The conditional release contract required A.D.T., *inter alia*, to 'refrain from the

3

purchase, possession or consumption of drugs.' The contract clarified that if A.D.T. violated the conditions, he could be subjected to internal sanctions or he could be returned to the district court. If A.D.T. was returned to the district court, the contract provided that the district court may (1) impose 2 days in a sanction house for a positive UA test, (2) resentence A.D.T. to a new juvenile disposition, or (3) impose one or more of a combination of sanctions.

"On January 23, 2015, A.D.T., now 20 years old, submitted to a UA test that was positive for cocaine. A.D.T.'s intensive supervision officer (ISO), Christy Blagg, sanctioned A.D.T. internally by referring him to Mirror Inc. for a substance abuse assessment.

"Mirror Inc. assessed A.D.T. on April 8, 2015. A.D.T reported that he lived in a drug-free home environment, that he did not use drugs or alcohol, and that he tried drugs around the age of 13 but had not used drugs or alcohol in the past 7 years, including the 5 years of his incarceration. A.D.T. denied having used cocaine before, despite his positive UA test. The Mirror Inc. report stated, 'It is somewhat difficult to fully determine, but at the same time questionable as to whether or not [A.D.T.] has any drug addiction problems; given that he had spent the majority of his teenage years in a Juvenile Detention Correctional Center.' The report concluded, 'Based on [American Society of Addiction Medicine, (ASAM)] criteria and with his SASSI test result finding that he has a Low Probability Of Having A Substance Abuse Disorder; this assessor is recommending No Treatment needed at this period of time.' The month following his assessment, on May 14, 2015, A.D.T. had a second positive UA test for cocaine.

"The matter was referred to the prosecutor's office, which filed a motion with District Judge Griffin seeking to revoke A.D.T.'s juvenile sentence and execute the adult sentence, alleging that A.D.T. violated conditional release by testing positive for cocaine twice. The judge entered an ex parte order finding cause to lift the stay of execution of A.D.T.'s adult sentence. The ex parte order for execution of adult sentence notified A.D.T. of his right to challenge the reasons for the revocation of the stay of execution and his right to a hearing. A.D.T. promptly filed a motion with the judge requesting an evidentiary hearing.

"In August 2015, the matter was reassigned to District Judge Delia York, who held an evidentiary hearing in November 2015, at which A.D.T. and ISO Blagg testified. A.D.T. admitted that he had two positive UA tests, but he claimed that after his assessment at Mirror Inc. for the first positive UA, he was told he would be reevaluated

4

for treatment if he had another positive test. A.D.T. acknowledged having discussed with ISO Blagg the consequences of a second positive UA test, but he contended that ISO Blagg never communicated that A.D.T. would have to serve a life sentence. Instead, he claimed, the ISO told him 'she didn't know because she never had anybody else on EJJP.'

"In contrast, ISO Blagg testified that she had told A.D.T. after his first positive UA that she had gone against her colleagues' wishes by asking for a substance abuse assessment, instead of turning the case over to the State for further court proceedings. The ISO explained to A.D.T. that this 'was his chance; and if he tested positive again, that we would have to turn it over to the district attorney's office, and we wouldn't have a choice at that time.' ISO Blagg related that on four occasions after A.D.T.'s first positive UA, including after his assessment at Mirror Inc., she had told A.D.T. that he was not allowed to use drugs and had discussed the ramifications of his EJJP sentence. The ISO testified that she explicitly told A.D.T. "'[y]ou don't want to do this again, 'cause it'll be twenty-five years of your life.'"

"In argument, counsel for A.D.T. conceded that A.D.T. did not dispute that he had two positive UA tests. However, counsel argued that the district court should not revoke A.D.T.'s juvenile sentence because A.D.T. did not receive the treatment at the KJCC that the court-ordered substance abuse evaluation recommended. Counsel asserted that this lack of service 'caused detriment' to A.D.T. by not giving him the tools that he needed to not use drugs when released back into the community. Counsel opined that revoking A.D.T.'s EJJP sentence would be 'essentially punishing [A.D.T.] for the fact that we didn't give him the services that he should have had while in the correctional facility.' Counsel also pointed to A.D.T.'s testimony that he was advised that a second positive UA test would result in a reassessment.

"The State responded that A.D.T.'s stipulation to two positive UA tests provided the necessary evidence to revoke A.D.T.'s juvenile sentence. The State also argued that ISO Blagg had warned A.D.T. of the consequences for a conditional release violation and that whether A.D.T. received substance abuse treatment at the KJCC was irrelevant on the question of whether he violated conditional release.

"Judge York found, by a preponderance of the evidence, that A.D.T. violated the terms of his signed conditional release contract by failing two drug tests; and that ISO Blagg had made A.D.T. aware of the consequences for a second positive drug test. The judge concluded that the controlling statute, K.S.A. 2015 Supp. 38-2364(b), *required* the revocation of A.D.T.'s juvenile sentence and imposition of his adult sentence upon the

5

court's finding of the conditional release violations. The court observed that the statutes make no exception for technical violations or substance abuse, 'even though the court may feel like there should be,' and the district court had no choice at that point but to affirm Judge Griffin's revocation of the juvenile sentence and commit A.D.T. to serve his adult sentence." *In re A.D.T.*, 306 Kan. 545, 546-50, 394 P.3d 1170 (2017).

A.D.T. appealed the revocation, arguing "his 'rights were violated when he did not receive notice as to what would cause the adult sentence to be implemented and when he did not receive services/treatment ordered by the court when he was a child.'" 306 Kan. at 550. The Kansas Supreme Court held: "Addressing only the issues raised in this direct appeal, we affirm the district court." 306 Kan. at 546.

The Kansas Supreme Court found that under the plain language of K.S.A. 2015 Supp. 38-2364(b), which stated the adult sentence would be executed upon finding by a preponderance of the evidence that the juvenile violated the conditions of his juvenile sentence, the district court judge was required to execute A.D.T.'s adult sentence. 306 Kan. at 552-53. Our Supreme Court also found that A.D.T.'s "complaint that he did not receive drug treatment while incarcerated in the juvenile facility [failed to] explain what 'right' the juvenile was denied." 306 Kan. at 554. Finally, our Supreme Court noted that it could "charitably construe A.D.T.'s brief on appeal as raising a constitutional due process of law issue when it asserts 'that the respondents [*sic*] rights were violated when he did not receive notice as to what would cause the adult sentence to be implemented.'" 306 Kan. at 554. But our Supreme Court went on to hold that the district court found that ISO Blagg informed A.D.T. of the consequences of a second positive test and, thus, he had "fair notice and warning that, if he failed another drug test, he was facing a hard 25 life sentence as an adult." 306 Kan. at 554.

Justice Rosen filed a concurrence, which A.D.T. told the district court was the basis for the instant K.S.A. 60-1507 motion. Justice Rosen stated:

"I write separately to express my concern regarding the constitutionality of the results dictated by the governing statute and the failure to provide A.D.T.'s substance abuse treatment. Because A.D.T. did not raise these arguments, they may not serve as the basis of our resolution in this case. However, I briefly note four areas that I believe deserve comment: (1) the possibility that the EJJP sentence resulted in an Eighth Amendment violation; (2) the possibility that the failure to provide substance abuse treatment resulted in an Eighth Amendment violation; (3) the possibility that the failure to provide substance abuse treatment resulted in a Fourteenth Amendment violation; and (4) the possibility that the failure to provide substance abuse treatment necessitated reconsideration of A.D.T.'s original sentence." 306 Kan. at 555 (Rosen, J., concurring).

Justice Rosen addressed each of these four areas. He closed his opinion by stating:

"In closing, I note that our legislature recently made changes to the governing statute that, had they been enacted earlier, would have had great effect on the disposition of this case. The new changes prohibit adult prosecution unless a juvenile is 14 or older, which may also eliminate EJJP for juveniles under 14. K.S.A. 2016 Supp. 38-2347(a)(1). Furthermore, the new EJJP statute makes it more difficult to revoke a juvenile sentence under EJJP—now, the execution of an adult sentence is stayed so long as the juvenile substantially complies with the conditions of the juvenile sentence. K.S.A. 2016 Supp. 38-2364(a)(2). The statute to which A.D.T. was subject allowed a judge to immediately revoke the juvenile sentence upon a single technical violation. K.S.A. 2015 Supp. 38-2364(a)(2). Finally, if the judge concludes that the juvenile failed to substantially comply with juvenile conditions that were ordered under EJJP, the new code allows the judge to reevaluate the original adult sentence before it is imposed, so long as the parties agree with that course of action. K.S.A. 2016 Supp. 38-2364(b).

"Thus, under the new statutory scheme, A.D.T. would either have been exempt from the adult sentence in the first place or his juvenile sentence would never have been revoked, since it is unlikely that a couple of dirty UAs would constitute a failure to 'substantially comply' with his juvenile conditions. Or, had A.D.T. still been subject to EJJP and the adult sentence, the judge would have had the authority to reconsider the terms of that adult sentence before its imposition." 306 Kan. at 559 (Rosen, J., concurring).

On June 1, 2018, A.D.T. filed his K.S.A. 60-1507 motion, alleging he received ineffective assistance from Debera Erickson, his counsel at the revocation hearing and on appeal of the revocation to the Kansas Supreme Court. He alleged that Erickson was ineffective on eight grounds: (1) she failed to argue that the adult sentence A.D.T. received pursuant to the EJJP violated his rights under the Eighth Amendment to the United States Constitution and § 9 of the Kansas Constitution Bill of Rights; (2) she failed to argue that the 2010 amendments to the EJJP should have been applied to A.D.T.'s case and the failure to apply them violated his rights under the Eighth Amendment to the United States Constitution and § 9 of the Kansas Constitution Bill of Rights; (3) she failed to argue that A.D.T.'s rights under the Eighth Amendment to the United States Constitution and § 9 of the Kansas Constitution Bill of Rights were violated when he was not provided substance abuse treatment as ordered by the court; (4) she failed to argue that A.D.T.'s due process rights under the Fourteenth Amendment to the United States Constitution were violated when he was not provided substance abuse treatment as ordered by the court; (5) she failed to argue that the State's failure to provide substance abuse treatment required reconsideration of A.D.T.'s adult sentence under the Eighth Amendment to the United States Constitution and § 9 of the Kansas Constitution Bill of Rights; (6) she stipulated to the results of his failed UAs at the revocation hearing; (7) she failed to argue that A.D.T.'s sentence to life imprisonment violated the Eighth Amendment to the United States Constitution and § 9 of the Kansas Constitution Bill of Rights; and (8) she failed to argue that the imposition of a life sentence violated A.D.T.'s substantive due process rights because it shocks the conscience in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

On March 7, 2019, A.D.T. filed a memorandum supporting his K.S.A. 60-1507 motion. Although A.D.T.'s original motion claimed his counsel was ineffective for failing to argue that the 2010 amendments to the EJJP applied to his case, the memorandum shifted the focus and argued that counsel was ineffective for failing to argue that the 2016 amendments to the EJJP were retroactive and applied to his case.

At a hearing on March 25, 2019, A.D.T. informed the district court that "the State has agreed that there is an Eighth Amendment violation here in the revocation of [A.D.T.]'s sentence . . . and that they agree that a life sentence in this instance would be unconstitutional." The district court asked A.D.T. what relief he was requesting based on that agreement, and A.D.T. explained that he and the State agreed to give A.D.T. an on-grid sentence and the best way to do that was to have A.D.T. withdraw his plea to first-degree murder and plead guilty to second-degree murder. The district court pointed out that the relief the parties discussed was "not what this motion is calling for" and the district court expressed uncertainty with how, by law, it was supposed to grant the relief the parties proposed. The district judge told the parties that they needed to file additional pleadings to determine how they would handle the case because "[r]ight now, I have a motion that's asking me to rule on whether or not Ms. Erikson was ineffective at the revocation hearing." The district court set another hearing for April 1, 2019.

On April 1, 2019, the district court held another hearing. A.D.T. clarified that he is arguing the sentence is unconstitutional under the Eighth Amendment because it is disproportionate. A.D.T. stated that after further consideration, he believed that they could proceed under K.S.A. 60-1507 as the procedural mechanism to "void out the revocation." Towards the end of the hearing, A.D.T. agreed to present evidence and use the ineffective assistance of counsel arguments to "void the revocation."

The district court held the evidentiary hearing on April 25, 5019. A.D.T. called Erickson as the only witness. Erickson testified that she is a licensed Kansas attorney who has been practicing for 29 years. She testified that she has been representing juveniles during her entire practice and that she "work[s] in juvenile court all the time." Erickson testified that at the time of the revocation hearing, she spoke to A.D.T., his family, the ISO, and the prosecutor about keeping A.D.T. on probation. Erickson stated that based on her review of A.D.T.'s records, her argument against revocation was that A.D.T. should not be revoked for a technical violation because he did not receive drug

9

treatment at the juvenile correctional facility. She also argued that A.D.T. did not receive proper notice as to what would cause his juvenile sentence to be revoked.

Erickson admitted that she did not raise any constitutional arguments at the revocation hearing. She also admitted that she did not raise any constitutional issues before the Kansas Supreme Court. Erickson testified that at the time of A.D.T.'s appeal, she did not know about the 2016 amendments to the EJJP and she found out about the amendments after she presented her argument. When asked if "[i]n retrospect" she would have done anything differently, Erickson stated she could have made the constitutional arguments, but she still did not believe there would have been a different result.

On May 24, 2019, the district court issued its order denying A.D.T.'s K.S.A. 60-1507 motion on all grounds. The district court addressed each of the constitutional issues and found that there was no reasonable probability that the outcome would have been different had Erickson made the arguments at the revocation hearing or on appeal. As for A.D.T.'s claim that Erickson was ineffective for failing to argue that the 2016 amendments to the EJJP applied to A.D.T.'s case, the district court found that the amendments were substantive and, thus, would not apply retroactively. A.D.T. timely appealed the district court's judgment.

On appeal, A.D.T. begins his brief by arguing that we have jurisdiction to hear his appeal because the EJJP "provides the appellate courts with jurisdiction to review [his] revocation and subsequent ineffective assistance of counsel arguments." The State argues that "A.D.T. lacks jurisdiction to bring this appeal with respect to claims previously made and decided by the Kansas Supreme Court with respect to the revocation of his juvenile sentence and the [imposition of his] adult sentence." But on July 7, 2020, the State filed a Supreme Court Rule 6.09 (2020 Kan. S. Ct. R. 39) letter of additional authority citing *In re J.P.*, 311 Kan. 685, 466 P.3d 454 (2020). In that case, our Supreme Court held that under "the plain language of K.S.A. 2019 Supp. 38-2347(e)(4)" a juvenile has "'all [the]

10

rights' an adult defendant would have under the Code of Criminal Procedure" including the right to appeal the revocation of a juvenile sentence and imposition of an adult sentence under the EJJP. *In re J.P.*, 311 Kan. at 691-92. At oral argument, both parties agreed that *In re J.P.* provides our court with jurisdiction to hear this appeal.

We find that the both parties' arguments on jurisdiction miss the mark. This is not an appeal from the district court's revocation and imposition of A.D.T.'s adult sentence. A.D.T. already appealed his revocation to the Kansas Supreme Court. Instead, this is an appeal from the district court's denial of A.D.T.'s K.S.A. 60-1507 motion alleging ineffective assistance of counsel. While A.D.T. is challenging counsel's performance at the revocation hearing, that does not make this action an appeal from the revocation. Instead, this is a collateral attack under K.S.A. 60-1507. Neither party contests that this court has jurisdiction to hear an appeal from the district court's denial of a K.S.A. 60-1507 motion. Thus, the parties' discussion on jurisdiction to appeal is irrelevant.

DID THE DISTRICT COURT ERR IN FINDING COUNSEL WAS NOT INEFFECTIVE?

In his original motion, A.D.T. argued that Erickson provided ineffective assistance of counsel at either the revocation hearing or the subsequent appeal on eight grounds. The district court held an evidentiary hearing and ultimately denied the motion on every claim. On appeal, A.D.T. challenges the district court's denial in relation to five of those claims. An issue not briefed is deemed waived or abandoned. *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018).

When the district court holds a full evidentiary hearing on a claim of ineffective assistance of counsel brought under K.S.A. 60-1507, this court reviews the district court's factual findings for substantial competent evidence and reviews whether the factual findings support the district court's conclusions of law. This court applies a de novo

11

standard of review when examining the district court's conclusions of law. *Fuller v. State*, 303 Kan. 478, 485, 363 P.3d 373 (2015).

The Sixth Amendment to the United States Constitution, as applied to the states under the Fourteenth Amendment, guarantees that in criminal prosecutions the accused has the right to effective assistance of counsel. *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014). An ineffective assistance of counsel claim is subject to the two-prong *Strickland* test. *Sola-Morales*, 300 Kan. at 882 (citing *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 [1984]).

"""The first prong of the test for ineffective assistance of counsel requires a defendant to show that counsel's representation fell below an objective standard of reasonableness, considering all the circumstances. Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. We must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.

"""[Under the second prong of the test for ineffective assistance of counsel], the defendant also must establish prejudice by showing that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. [Citations omitted.]""" *State v. Butler*, 307 Kan. 831, 852-53, 416 P.3d 116 (2018).

As we stated, A.D.T. challenges the district court's denial of his ineffective assistance of counsel claims on five grounds. The first four claims involve Erickson's failure to raise constitutional challenges to the revocation of his juvenile sentence and the imposition of his hard 25 adult sentence. The fifth claim involves Erickson's failure to

12

argue that the 2016 amendment to K.S.A. 38-2364 applied retroactively to A.D.T.'s case. We will address each of these claims in turn.

*Was counsel ineffective for failing to argue that, as applied in this case, a hard 25 life sentence violated the Eighth Amendment to the United States Constitution and § 9 of the Kansas Constitution Bill of Rights?*

After the evidentiary hearing, the district court found that there was not a reasonable probability that had counsel made this argument, the result would have been different. The district court reasoned that in *State v. Brown*, 300 Kan. 542, 563-64, 331 P.3d 781 (2014), the Kansas Supreme Court held that a mandatory hard 20 life sentence for a 13-year-old was not unconstitutional. Thus, the district court reasoned that Erickson was correct in her decision to forgo an argument that the EJJP and A.D.T.'s hard 25 life sentence violated the Eighth Amendment.

A.D.T. argues the district court "completely side-stepped the merits of [this] claim, and without any discussion, merely asserted that . . . counsel's reliance on *State v. Brown* . . . was not ineffective, and the result would not have been different." A.D.T. argues Erickson should have argued that A.D.T.'s sentence was disproportional under the Eighth Amendment, because Justice Rosen questioned the exact issue in his concurrence and Erickson testified at the evidentiary hearing that it was not part of her strategy not to raise the issue. A.D.T. then engages in a case specific proportionality analysis that will be discussed in more detail below. The State responds solely by asserting that an attorney does not have a duty to assert on appeal every alleged error.

A.D.T. is correct that the district court seemed to have side-stepped the applicable Eighth Amendment analysis. The Eighth Amendment to the United States Constitution prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This provision has been interpreted to require the punishment be "'graduated and proportioned to [the] offense.'" *Brown*, 300 Kan. at 563 (quoting *Graham v. Florida*, 560 U.S. 48, 59,

13

130 S. Ct. 2011, 176 L. Ed. 2d 825 [2010]). There are two types of proportionality challenges that can be advanced under the Eighth Amendment: (1) a case specific challenge to "'the length of term-of-years sentences given all the circumstances in a particular case'" and (2) a categorical challenge based on certain categorical restrictions. See *State v. Patterson*, 311 Kan. 59, 71, 455 P.3d 792 (2020), *cert. denied* __ U.S. __, 2020 WL 5882678 (2020).

The district court and Erickson relied on *Brown* to find that failing to raise the argument did not prejudice A.D.T. In *Brown*, the defendant was 13 years old when she shot the victim in the face. She was tried as an adult, found guilty of first-degree felony murder and attempted aggravated robbery, and was sentenced to a hard 20 life sentence. On appeal, she argued that her sentence was unconstitutional under the Eighth Amendment. In addressing her appeal, the Kansas Supreme Court summarized United States Supreme Court precedent, *Miller v. Alabama*, 567 U.S. 460, 465, 480, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), which held mandatory life-without-parole sentences for juveniles are unconstitutional under the Eighth Amendment. *Brown*, 300 Kan. at 563. The Kansas Supreme Court reasoned that life-without-parole sentences, as discussed in *Miller*, were not equivalent to Brown's hard 20 sentence because "[a] hard 20 life sentence does not irrevocably adjudge a juvenile offender unfit for society [and] it gives the offender a 'meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation' by permitting parole after the mandatory 20—year minimum prison term is served." *Brown*, 300 Kan. at 564. Thus, the Kansas Supreme Court declined to extend *Miller* to sentences of life with the possibility of parole.

While the district court and Erickson correctly acknowledged that *Brown* spoke to the proportionality of a hard 20 sentence for a 13-year-old, *Brown* discussed a categorical challenge which is different from a case specific challenge. In his motion, A.D.T. argues counsel should have advanced a case specific proportionality challenge—that A.D.T.'s hard 25 sentence was disproportional based on the specific facts of his case. Thus, the

district court should have examined whether a *case-specific* proportionality challenge would have a reasonable probability of changing the outcome of A.D.T.'s revocation hearing or his appeal from the revocation.

A.D.T. argues his sentence as applied in this case "violate[s] the rationales of United States Supreme Court precedent and the Eighth Amendment's proportionality requirement as set out in *State v. Freeman*, 223 Kan. 362, [367, 574 P.2d 950 (1978)]." But the *Freeman* factors are the test for § 9 of the Kansas Constitution Bill of Rights proportionality challenge. The Kansas Supreme Court has acknowledged, however, that the analysis under the *Freeman* factors "'applies with equal force' to a case-specific Eighth Amendment challenge." *State v. Seward*, 296 Kan. 979, 990, 297 P.3d 272 (2013). The *Freeman* factors require courts to consider:

> "'(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;
> "'(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty to that extent is suspect; and
> "'(3) A comparison of the penalty with punishments in other jurisdictions for the same offense.'" *State v. Funk*, 301 Kan. 925, 935, 349 P.3d 1230 (2015) (quoting *Freeman*, 223 Kan. at 367).

A.D.T. argues that the first factor weighs so heavily in his favor that "it alone supports a finding of disproportionality." More specifically, he points to the strong negative influence of Keyona White, A.D.T.'s lack of maturity, his being 13 when he committed the crime, and his lack of prior criminal history or violent tendencies. A.D.T. argues that the United States Supreme Court's discussion in *Miller* about the distinctive

15

attributes of youth also supports finding the sentence here was disproportional. He then states that the concerns he raises are reflected in the EJJP's 2016 amendments which prevent a juvenile under the age of 14 from being prosecuted as an adult.

As for the second and third factors, A.D.T. argues that comparison to other jurisdictions is difficult because of the fact-specific nature of this case, and because his research did not uncover other cases that were similar. A.D.T. acknowledges *Brown* but argues the only similarity between that case and his case is that both were 13 when they committed their crimes. A.D.T. argues Brown had a more violent history and was not under the strong influence of an adult who orchestrated the crimes or under the influence of substances like he was. Finally, A.D.T. asserts he was "sentenced under the EJJP to avoid a cruel and unusual punishment for a 13 year old [but] the adult sentence imposed, in the end, resulted in a disproportionate sentence."

In evaluating A.D.T.'s argument, it helps to remember that he is arguing counsel was ineffective at the revocation hearing in November 2015 and the later appeal to the Kansas Supreme Court. Although this court is evaluating his argument under the *Freeman* factors, it is doing so to determine whether Erickson's performance in November 2015 was deficient for failing to raise this argument. Under this narrow examination, A.D.T.'s argument that Erickson was ineffective for failing to raise a proportionality challenge is unpersuasive.

For the first *Freeman* factor, his reliance on quotes and reasoning from the United States Supreme Court's discussion of juveniles in *Miller* is unpersuasive. *Miller*, as discussed above, held mandatory life-without-parole sentences for juveniles was unconstitutional under the Eighth Amendment. And as Erickson and the district court recognized, at the time of the revocation hearing and A.D.T.'s appeal, the Kansas Supreme Court did not seem to find that *Miller*'s reasoning should be expanded to life sentences with the possibility of parole for juveniles, as stated in *Brown*.

16

We are aware that a panel of this court recently expanded the *Miller* reasoning in *State v. Williams*, 58 Kan. App. 2d 947, 2020 WL 5996442 (2020). In that case, this court held that a hard 50 sentence for a juvenile offender is unconstitutional, reasoning that a 50-year sentence is the functional equivalent of life without parole. 2020 WL 5996442, at *14. *Williams* is materially distinguishable from A.D.T.'s case because it involves a hard 50 sentence and not a hard 25 sentence. And this precedent was unavailable when Erickson represented A.D.T. This court examines counsel's perspective at the time of the hearing without the "distorting effects of hindsight." *Butler*, 307 Kan. at 853. Thus, when Erickson represented A.D.T. there was no sign that Kansas courts would expand *Miller*'s application to life with the possibility of parole sentences.

Although a lack of authority does not necessarily mean that A.D.T.'s argument fails, A.D.T. only engages in half of the required analysis. The first *Freeman* factor requires analysis of the character of the offender *and* the nature of the offense. While A.D.T. points to his age and his diminished culpability based on White's influence, he does not discuss the other relevant considerations under this factor including the facts of the crime, the violent nature of the offense, or the penological purposes of punishment. *Funk*, 301 Kan. at 935 (stating first factor in full including that "'relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment'"). A.D.T. objects to the imposition of one of the State's most severe penalties but does not discuss that he pled guilty to premeditated first-degree murder, one of the State's most severe crimes, and that he committed the crime in a cold-hearted manner by killing a homeless person for no apparent reason. Because A.D.T. fails to engage in the full analysis, he has not established that the first *Freeman* factor "weighs heavily" in his favor and establishes that his sentence was disproportional.

As for the second and third *Freeman* factors, A.D.T. concedes that it is hard to analyze these factors due to a lack of similar cases. A.D.T. asserts that simply because the

17

defendant in *Brown* was the same age as A.D.T. does not mean that *Brown* was similar enough to provide Erickson with guidance. But A.D.T. points to no other cases that Erickson could have found in 2015 that would support advancing an argument under the second and third *Freeman* factors. Seeing as how A.D.T. cannot come up with a substantial argument under these two factors, his assertion that Erickson was ineffective for raising this argument is unpersuasive.

In sum, there is not a reasonable probability that had Erickson argued this Eighth Amendment claim as A.D.T. presents it, A.D.T.'s sentence would have been found disproportionate. First, it is unclear whether A.D.T.'s sentence is disproportional because A.D.T. does not fully analyze the *Freeman* factors in his brief so that this court, or the district court, could make that decision. Further, A.D.T. fails to point to authority that at the time would have suggested a *Freeman* argument would have had a reasonable probability of changing the outcome. Thus, Erickson was not ineffective for failing to raise a proportionality challenge under the Eighth Amendment because A.D.T. cannot establish that there was a reasonable probability that that outcome would have been different. The district court did not err in denying his motion on this claim.

Finally, under this section of his brief, A.D.T. argues that the district court erred in not allowing him to withdraw his plea. But A.D.T. never filed a motion in district court requesting that he be allowed to withdraw his plea. After filing his K.S.A. 60-1507 motion, A.D.T. told the district court that he and the State had agreed on withdrawing his plea and pleading guilty to second-degree murder. The district court expressed some concern with the disconnect between the K.S.A. 60-1507 motion filed and the relief A.D.T. requested about the plea. In a later hearing, A.D.T. announced that he would simply rely on the K.S.A. 60-1507 motion to get him the relief he was requesting, which was to "void the revocation" of the juvenile sentence. Under these circumstances, we find that any claim that the district court erred in not allowing A.D.T. to withdraw his plea is

18

not preserved for appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014) (finding that an issue not raised in district court generally cannot be raised on appeal).

*Was counsel ineffective for failing to argue that failure to provide substance abuse treatment to A.D.T. violated the Eighth Amendment to the United States Constitution and § 9 of the Kansas Constitution Bill of Rights?*

The district court found there was not a reasonable probability that the outcome would have been different had Erickson raised this argument. The district court pointed out that substance abuse problems have yet to be characterized as a serious medical need under the Eighth Amendment. The district court also found that although the court ordered treatment, negligence in terms of staffing and organization does not amount to deliberate indifference. Thus, the district court reasoned that this argument is overreaching and was not supported by law when Erickson represented A.D.T.

A.D.T. argues that had Erickson made this argument there is a reasonable probability that the outcome would have been different because there is a medical consensus that substance abuse is a serious medical need, other jurisdictions "have readily recognized" substance abuse is a serious medical need, and "Justice Rosen himself found that substance abuse is a serious medical need, indicating that based on existing precedent, members of the Kansas Supreme Court are prepared to recognize substance abuse treatment as a serious medical need." In support of this assertion A.D.T. points to the American Medical Society's definition of addiction from 2019, the Diagnostic and Statistical Manual of Mental Disorders' classification of substance abuse as a disease, and Justice Rosen's assertion that substance abuse is a serious medical need. The State makes no argument in response. Instead, its brief on this issue merely contains a recitation of the district court's findings.

The United States Supreme Court has held that deliberate indifference "to serious medical needs of prisoners" violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S.

19

97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). Under this analysis, an objective prong asks whether "'the harm suffered rises to a level sufficiently serious to be cognizable under the Cruel and Unusual Punishment Clause of the Eighth Amendment.'" *Quintana v. Santa Fe County Bd. of Commissioners*, 973 F.3d 1022, 1029 (10th Cir. 2020). A medical need is sufficiently serious if "'it is one that has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" 973 F.3d at 1029. Additionally, a subjective prong asks whether the officials knew the prisoner "'faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it.'" 973 F.3d at 1029; see also *Darnell v. Simmons*, 30 Kan. App. 2d 778, 781, 48 P.3d 1278 (2002) (citing same two prong test).

Erickson was not ineffective for failing to raise this argument because A.D.T. cannot establish that the failure to provide him with substance abuse treatment violated his Eighth Amendment rights so that had Erickson raised this argument there would have been a reasonable probability that the outcome would have been different.

First, he fails to establish the objective prong, that substance abuse is a sufficiently serious medical need implicating the Eighth Amendment. While A.D.T. points to a "medical consensus" that drug abuse is a serious medical need, the sources he cites do not establish that his drug abuse was a serious medical need "'that has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Quintana*, 973 F.3d at 1029. Further, the definition of addiction he relies on is from 2019, two years after the Kansas Supreme Court issued its opinion in his direct appeal. Thus, it does not help clarify whether in 2015 drug abuse treatment was considered a serious medical need so that Erickson should have raised this argument.

20

Additionally, the only case A.D.T. cites in support of his assertion that other jurisdictions have readily recognized substance abuse as a serious medical need is *Palmigiano v. Garrahy*, 443 F. Supp. 956 (D.R.I. 1977), a consolidated class action brought on behalf of all prisoners at a Rhode Island adult correctional institution. A.D.T. does not provide a pinpoint cite to support his assertion. Upon review, the opinion does discuss the lack of substance abuse treatment as one of the many of issues raised in this action, but the opinion addresses the lack of substance abuse treatment separately from the inadequate medical care issues. The opinion also does not state that substance abuse is a serious medical need under the Eighth Amendment. Instead, it seemed to address the lack of treatment as part of the totality of the conditions at issue in that case. Thus, *Palmigiano* does not support A.D.T.'s assertion that other jurisdictions "have readily recognized" substance abuse is a serious medical need.

As mentioned above, while lack of authority does not necessarily mean an argument does not have merit, on these facts, A.D.T. fails to establish an Eighth Amendment violation. A.D.T. fails to establish that he had a serious medical need for substance abuse treatment. The district court at sentencing only ordered that A.D.T. undergo a substance abuse evaluation and follow the recommendations of the evaluation, the court did not explicitly order substance abuse treatment. The evaluation did not show that A.D.T. had serious substance abuse problems. As the Kansas Supreme Court pointed out in his revocation appeal:

> "KJCC staff completed a program plan and progress report addressing A.D.T.'s substance abuse assessment during his incarceration. A.D.T.'s test results on the Substance Abuse Subtle Screening Inventory (SASSI) indicated a 'low probability' for substance abuse or dependence disorder. But because A.D.T. self-reported past drug use and admitted to using drugs during the commission of his crime, the report recommended that A.D.T. be referred to the Pathways substance abuse program. A.D.T. remained on the waiting list for Pathways throughout his juvenile incarceration. The final update in the report clarified, 'Due to time constraints, lack of counselors/programming, youth

21

education credits interfering with programming time, and [A.D.T.'s] low [Youth Level of Service (YLS)] scores[,] [A.D.T.] will not complete substance abuse treatment at KJCC before his July 19, 2013[,] release date.' The report recommended that A.D.T. attend community support systems such as Narcotics Anonymous (NA) and Alcoholics Anonymous (AA) upon his release and submit to random UA tests. In addition, if A.D.T. was found to be using substances on release, he was to be assessed for substance abuse and follow any outpatient treatment recommendations." *In re A.D.T.*, 306 Kan. at 547.

A.D.T. scored in the "low probability" range for substance abuse and was only recommended to treatment because of his self-reported use of drugs in the past and during the crime. A.D.T. claims in his brief that "Dr. Peterson mandated substance abuse treatment, diagnosing A.D.T. with Axis 1 Polysubstance Abuse." The page cited states that at the time of the charged offense A.D.T., based on the use of three drugs, would qualify for an Axis 1 Polysubstance Abuse. But it later stated that there was no indication of a long-standing substance abuse problem. Thus, there is a lack of support for A.D.T.'s assertion that he had serious substance abuse problems when he was confined in the KJCC. The facts of A.D.T.'s case do not establish that his need for substance abuse treatment "'is so obvious that even a lay person would easily recognize the necessity for a doctor's attention'" so that the Eight Amendment is implicated. See *Quintana*, 973 F.3d at 1029 (defining serious medical need). Thus, A.D.T.'s claim fails under the objective prong of the Eighth Amendment analysis.

Second, A.D.T. cannot establish the subjective prong of the test, that the KJCC knew he "'faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it.'" 973 F.3d at 1029. A.D.T. argues that the failure to provide him with treatment increased his risk of relapse during his conditional release. While A.D.T. points to a risk associated with not receiving treatment, he fails to establish that the KJCC *knew* he faced this risk and that the risk was "substantial." As discussed above, the KJCC's evaluation established that A.D.T. had a low probability for substance abuse. Further, the district court found negligence in terms of staffing and organization

22

does not amount to deliberate indifference. A.D.T. does not challenge this finding. Thus, contrary to his assertion, it is not clear that the KJCC knew he faced a risk of relapse, let alone that this risk was "substantial."

In sum, the failure to provide A.D.T. with substance abuse treatment does not rise to the level of an Eighth Amendment violation. A.D.T. cannot establish that substance abuse is a serious medical condition. He also fails to establish that the KJCC was deliberately indifferent to this need. As such, he has failed to prove that there was a reasonable probability that the outcome at his revocation hearing or his subsequent appeal would have been different had Erickson raised this constitutional argument. Thus, Erickson was not ineffective for failing to raise this argument and the district court did not err in denying his motion on this issue.

*Was counsel ineffective for failing to argue that the failure to provide substance abuse treatment to A.D.T. and provide him with accurate notice as to what conduct would revoke his juvenile sentence violated procedural due process?*

A.D.T. argues that Erickson was ineffective for failing to raise two procedural due process arguments. A.D.T. acknowledges that in her brief to the Kansas Supreme Court, Erickson argued the failure to provide treatment and inadequate notice. But he argues that because she raised them in the context of showing manifest injustice and failed to "constitutionalize" them, the court could not grant A.D.T. relief. The State provides no argument in response to the treatment argument and merely summarizes the district court's findings on the notice argument.

The Fourteenth Amendment to the United States Constitution provides that no State "shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The basic elements of procedural due process are notice and an opportunity to be heard. The first step of analysis for a procedural due process claim requires the court to examine whether the claimant was entitled to and

23

denied a specific procedural protection. In considering the procedural protection required the court weighs:

> "'(1) the individual interest at stake; (2) the risk of erroneous deprivation of the interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (3) the State's interest in the procedures used, including the fiscal and administrative burdens that any additional or substitute procedures would entail.'" *In re A.A.-F.*, 310 Kan. 125, 145, 444 P.3d 938 (2019).

### 1. Failure to provide substance abuse treatment.

The district court held Erickson's performance was not deficient for failing to advance this argument and there was not a reasonable probability the outcome would have been different. The district court found that while A.D.T. advances a creative argument, he points to no authority Erickson could have relied on to argue A.D.T. had a liberty interest in substance abuse treatment.

A.D.T. argues "[t]here is a strong likelihood that the Kansas Supreme Court would have granted relief on appeal had counsel established that A.D.T. was entitled to substance abuse treatment." A.D.T. argues substance abuse treatment qualifies as a liberty interest because: (1) the juvenile code contains provisions that permit the court to order a juvenile to undergo substance abuse evaluations and "the purpose of an evaluation is treatment"; (2) the district court ordered A.D.T. to receive substance abuse treatment at sentencing; and (3) A.D.T.'s case plan "mandated" that he receive treatment.

A.D.T. then cites the factors to determine what procedural protection is required but he removes any language referring to "procedure" from his factors. For the first factor A.D.T. argues that his interest to be free from custody depended on treatment. For the second factor—which he classified as "the risk if the interest is not provided"—he states that the risk of not providing treatment was that he was now incarcerated for 25 years.

24

For the final factor—which he classified as the "burden to the government"—he argues that when the juvenile center failed to provide treatment to him it failed to meet the needs of the State, which were to ensure that he became a productive member of society.

A.D.T. cannot show that Erickson was ineffective for failing to raise this argument because A.D.T. himself does not advance a *procedural* due process claim. First, he identifies substance abuse treatment as a protected liberty interest. But he does not establish how the failure to provide substance abuse treatment implicated his *procedural* due process rights. Although he generally cites law for a procedural due process claim, he improperly removed any language about procedure. This can be seen when comparing the actual law with the law A.D.T. cites.

A.D.T. cites *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), and lays out the procedural protection factors as: "(1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of such interest; and (3) the fiscal and administrative burdens to the government." But *Mathews* properly lays out the factors of a procedural due process claim as:

> "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest *through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards*; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens *that the additional or substitute procedural requirement would entail*."
> (Emphases added.) 424 U.S. at 335.

By removing the procedure language, A.D.T.'s argument fails to present a procedural due process claim. Instead, he seems to be attempting to advance a substantive due process claim without citing the substantive due process law. Because the argument A.D.T. asserts Erickson should have advanced is not a proper procedural due process argument, Erickson was not ineffective for failing to raise it. The argument, as advanced

25

by A.D.T. has no reasonable probability of changing the outcome. Thus, the district court did not err in denying relief on this claim.

*2. Failure to provide notice of what conduct would cause revocation.*

The district court found that Erickson was not ineffective for failing to raising this argument because the argument is "not rational" based on (1) Blagg's testimony that A.D.T. was on notice of the consequences of his continued drug use while serving his juvenile sentence; (2) A.D.T.'s representation by counsel throughout the pendency of his juvenile matter; and (3) his presence at sentencing when the judge announced the adult sentence would be stayed.

A.D.T. argues the district court's finding that Blagg provided him with notice is not supported by substantial competent evidence. He points to his own testimony as contradicting Blagg's. He also argues the notice must come from the sentencing court. He argues Erickson's failure to constitutionalize this issue "cost [him] 25 years to life."

But this issue can easily be disposed of. A.D.T. concedes that the Kansas Supreme Court charitably construed Erickson's manifest injustice argument about A.D.T. not receiving notice as a constitutional one. In fact, the Kansas Supreme Court stated:

> "Perhaps we could charitably construe A.D.T.'s brief on appeal as raising a constitutional due process of law issue when it asserts 'that the respondents [sic] rights were violated when he did not receive notice as to what would cause the adult sentence to be implemented.' But the facts do not support that argument. The district court specifically found that ISO Blagg made A.D.T. aware of the consequences for a second positive drug test. In other words, A.D.T. did, in fact, have fair notice and warning that, if he failed another drug test, he was facing a hard 25 life sentence as an adult." *In re A.D.T.*, 306 Kan. at 554.

Thus, although Erickson did not raise the issue as a constitutional one, the Kansas Supreme Court still addressed the constitutional argument on appeal and rejected it based on the district court's findings that Blagg did, in fact, make A.D.T. aware of the consequences of a second positive drug test. Thus, A.D.T. cannot show he was prejudiced by Erickson's failure to raise this argument. The district court did not err in denying his motion on this claim.

*Was counsel ineffective for failing to argue that, as applied to this case, the imposition of a hard 25 life sentence violated substantive due process rights?*

The district court found there was not a reasonable probability that the outcome would have been different had Erickson raised this argument. The district court first pointed out that, contrary to his argument, A.D.T. did not receive a life sentence for his two positive UAs but instead for committing first-degree murder. The district court also agreed that it was shocking that White did not receive any criminal liability for her part in the crimes but found that this fact does not affect A.D.T.'s responsibilities under the EJJP. Finally, the district court found A.D.T. provided no authority to support his argument that his sentence shocks the conscience so that Erickson should have argued this point.

A.D.T. argues the district court's conclusions are wrong because it relied on the lack of authority to resolve the issue when due process violations are fact-specific inquiries. A.D.T. argues Erickson was ineffective for not raising this issue because almost every aspect of this case shocks the conscience. A.D.T. then asserts Justice Rosen "forcefully argued" that the denial of substance abuse treatment "may" violate A.D.T.'s due process rights. A.D.T. points to the fact that he was the only one held responsible for this crime while White got away with murder. He also argues that he was denied treatment which left him with no tools to successfully complete his sentence. Finally, he argues that it "should shock us all" that he is serving a life sentence for two positive UAs when "all the adults around him failed him." The State argues that A.D.T.'s claim fails to

acknowledge that the only available sentence for the crime A.D.T. committed was the one that was imposed. The State then quotes the district court's findings on this issue.

A substantive due process claim limits what the government may do and protects the individual from arbitrary action of the government. *County of Sacramento v. Lewis*, 523 U.S. 833, 845-46, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998). "[T]he cognizable level of executive abuse of power [is] that which shocks the conscience." 523 U.S. at 846. "[T]he 'shock the conscience' standard is satisfied where the conduct was 'intended to injure in some way unjustifiable by any government interest,' or in some circumstances if it resulted from deliberate indifference." *Rosales-Mireles v. United States*, 585 U.S. ___, 138 S. Ct. 1897, 1906, 201 L. Ed. 2d 376 (2018).

A.D.T. fails to establish a substantive due process claim. To the extent that he points to White's lack of punishment, A.D.T. does not explain how this is an executive abuse of power affecting A.D.T. and he fails to point to which governmental actor abused its power in not punishing White. Further, even assuming White should have been punished, it would not, as the district court correctly found, lessen A.D.T.'s criminal liability. White's influence was considered by the district court when he was originally placed under the EJJP and given a juvenile sentence. Thus, this argument fails to establish a substantive due process claim.

Next, A.D.T. is correct that most would find a life sentence for two failed UAs shocking. But A.D.T.'s argument fails to acknowledge that he did not receive a life sentence for those violations. Instead, he received a life sentence for first-degree premeditated murder. Because of his placement under the EJJP, his life sentence was *stayed* as long as he complied with the terms of his juvenile sentence. See K.S.A. 2019 Supp. 38-2364(a). He also fails to point to what government abuse of power led to this result. Thus, this argument fails because it stems from a faulty factual presumption and it does not establish a substantive due process violation.

28

As for his claim about the KJCC failing to provide treatment, his argument also fails. A.D.T. merely asserts that the court ordered substance abuse treatment and that the district court sent A.D.T. to the KJCC to receive treatment. As discussed in relation to his Eighth Amendment denial of medical care claim, A.D.T. cannot show KJCC's failure to provide treatment was intended to injure A.D.T. or due to deliberate indifference.

As to whether A.D.T.'s treatment under the EJJP shocks the conscience and offends traditional notions of fairness, it is worth noting that when A.D.T. failed his second drug test and the State moved to revoke the juvenile sentence, Judge Griffin was not *required* to grant the motion ex parte. K.S.A. 2015 Supp. 38-2364(b) provided that when it appears that a person sentenced under the EJJP has violated one or more conditions of the juvenile sentence, the court, without notice, *may* revoke the stay and the juvenile sentence and direct that the offender be taken into custody. Thus, Judge Griffin had discretion not to revoke the juvenile sentence even though it appeared that A.D.T. had violated the conditions. See *In re A.M.M.-H.*, 300 Kan. 532, 540, 331 P.3d 775 (2014) (holding that district court retains discretion to determine whether violation warrants revocation of the stay of adult sentence).

After Judge Griffin entered the ex parte order finding cause to lift the stay, A.D.T. exercised his right to a hearing to challenge the reasons for the revocation. K.S.A. 2015 Supp. 38-2364(b). When the district court found by a preponderance of the evidence that A.D.T. violated the conditions of the juvenile sentence, then the court had no choice but to revoke the juvenile sentence. K.S.A. 2015 Supp. 38-2364(b); *In re A.M.M.-H.*, 300 Kan. at 540. But even then, the district court could have modified the adult sentence upon agreement of the parties. K.S.A. 2015 Supp. 38-2364(b). Thus, A.D.T.'s treatment under the 2015 version of the EJJP was not as shocking to the conscience and fundamentally unfair as he argues in his brief.

29

In sum, Erickson was not ineffective for failing to raise this substantive due process argument as there is not a reasonable probability the outcome of A.D.T.'s revocation hearing or his subsequent appeal would have been different had she raised it. The district court did not err in denying his motion on this claim.

*Was counsel ineffective for failing to argue that the 2016 amendment to K.S.A. 38-2364 applied to A.D.T.'s pending case on appeal?*

To understand this argument and the district court's findings, the statute and its 2016 amendment should first be examined. Before 2016, K.S.A. 2015 Supp. 38-2364(a)(2) stated that after a finding of guilt under the EJJP, a district court shall impose a juvenile sentence and "impose an adult criminal sentence, the execution of which shall be stayed on the condition that the juvenile offender not violate the provisions of the juvenile sentence and not commit a new offense." Effective July 1, 2016, subsection (a)(2) stated that after a finding of guilt under the EJJP, a district court shall impose a juvenile sentence and "impose an adult criminal sentence, the execution of which shall be stayed on the condition that the juvenile offender *substantially comply with* the provisions of the juvenile sentence and not commit a new offense." (Emphasis added.) K.S.A. 2016 Supp. 38-2364(a)(2). The amendment was not effective in November 2015 at A.D.T.'s revocation hearing, but it became effective almost a year before the Kansas Supreme Court issued its final opinion in June 2017. A.D.T. claimed in his K.S.A. 60-1507 motion that Erickson should have argued on appeal that the amendment would apply to his case.

The district court found there was not a reasonable probability that had Erickson argued the amendment applied, the outcome would have been different. The district court reasoned that the amendment changed the standard of proof for a violation and could not be characterized as a procedural change that would apply retroactively. The district court also found that the amendment contained no retroactivity language.

A.D.T. argues Erickson was ineffective for failing to raise the application of the 2016 amendment because A.D.T. was entitled to receive the benefit of any change in the law that occurred during his appeal. A.D.T. argues the 2016 amendment would likely be held to apply retroactively because the amendment was procedural or remedial in nature. He points out that this court held a 2010 amendment to the same statute was found to be retroactive because it was procedural or remedial. A.D.T. argues that Erickson conceded that she did not know about the 2016 amendment and she failed to investigate the statute, so her performance fell below the "professional norms" and prejudiced him. A.D.T. asserts that Justice Rosen noted in his concurrence that, under the amendment, A.D.T.'s technical violation would not have constituted a substantial violation. The State simply argues the district court's findings were correct.

A.D.T. correctly asserts that a defendant is entitled to receive the benefit of any change in the law that occurs while the direct appeal is pending. See *State v. McAlister*, 310 Kan. 86, 91, 444 P.3d 923 (2019). The 2016 amendment became effective on July 1, 2016, after both parties had filed their briefs on appeal but months before the oral argument was scheduled and almost a year before A.D.T.'s appeal was decided. Thus, if the amendment would apply retroactively to A.D.T.'s case, A.D.T. would be entitled to receive the benefit of the amendment. And if A.D.T. was entitled to receive the benefit of the amendment, he could have sought relief under Supreme Court Rule 5.01 (2020 Kan. S. Ct. R. 30) to file a supplemental brief to raise the issue in his pending appeal.

A.D.T. argues the amendment would apply retroactively because it is merely procedural. Generally, a statutory change operates prospectively except (1) when its language clearly shows that the Legislature intended retroactive application, or (2) when the statutory change is merely procedural or remedial in nature and does not prejudicially affect a party's substantive rights. See *White v. State*, 308 Kan. 491, 499, 421 P.3d 718 (2018). A.D.T. does not disagree with the district court's conclusion that the statute

31

contains no language showing the Legislature intended it to apply retroactively but he does disagree with the district court's conclusion that the amendment is not procedural.

"'As related to criminal law and procedure, *substantive law* is that which declares what acts are crimes and prescribes the punishment therefor; whereas *procedural law* is that which provides or regulates the steps by which one who violates a criminal statute is punished.'" *State v. Dawson*, 55 Kan. App. 2d 109, 117, 408 P.3d 995 (2017) (quoting *State v. Hutchison*, 228 Kan. 279, 287, 615 P.2d 138 [1980]), *aff'd*, 310 Kan. 112, 444 P.3d 974 (2019). The amendment here is not substantive as it does not alter the crimes or punishments enumerated under the EJJP. And contrary to the district court's assertion, it does not change the burden of proof needed to prove a violation; the burden of proof for a violation remains by a preponderance of evidence. See K.S.A. 2016 Supp. 38-2364(b). Instead, the amendment simply modifies the circumstances under which the adult sentence is stayed, from requiring total compliance to substantial compliance. Compare K.S.A. 2015 Supp. 38-2364(a)(2) with K.S.A. 2016 Supp. 38-2364(a)(2).

Remedial statutes reform or extend existing rights. *Brennan v. Kansas Insurance Guaranty Ass'n*, 293 Kan. 446, 461, 264 P.3d 102 (2011). "A remedial statute is legislation providing the means or method whereby causes of action may be effectuated, wrongs redressed, and relief obtained. Remedial legislation is liberally construed to effectuate the purpose for which it was enacted. [Citation omitted.]" *Southwestern Bell Tel. Co. v. Kansas Corporation Comm'n*, 29 Kan. App. 2d 414, 421, 29 P.3d 424 (2001).

Under these definitions, the 2016 amendment to K.S.A. 38-2364(a)(2) is procedural or remedial in nature. The amendment goes to the procedure the district court must apply when revoking a juvenile sentence under the EJJP. But even procedural rules cannot be applied retroactively if they eradicate a vested right. See *White*, 308 Kan. at 499. Courts consider three factors to determine whether a statutory amendment violates a party's vested rights:  (1) the nature of the rights at stake (e.g., procedural, substantive,

remedial); (2) how the rights were affected (e.g., were the rights partially or completely abolished by the legislation and was any substantive remedy provided); and (3) the nature and strength of the public interest furthered by the legislation. See 308 Kan. at 499. Here, there is no eradication of a vested right. Instead, the amendment provides more protection to juveniles from the imposition of adult sentences than the previous version of the law.

As A.D.T. points out in his brief, this court previously held that a 2010 amendment to K.S.A. 38-2364 was procedural or remedial and applied retroactively to a juvenile offender's case that was pending on direct appeal when the amendment became effective. See *In re I.A.*, No. 104,482, 2011 WL 3250584, at *7 (Kan. App. 2011) (unpublished opinion). In 2010, the Kansas Legislature amended K.S.A. 38-2364(b) to allow the district court to modify the adult sentence upon agreement of the parties when the offender's juvenile sentence is revoked. See L. 2010, ch. 163, § 1. In deciding whether the amendment applied retroactively, this court stated:

> "As a general proposition, statutory changes will be applied only prospectively unless the amendment affirmatively provides otherwise. But the courts will apply an amendment that is either procedural or remedial to cases pending when the change goes into effect. The amendment contains nothing addressing retroactive application. The change in K.S.A. 2010 Supp. 38-2364 is, however, procedural in that it alters none of the substantive rights or obligations associated with an extended jurisdiction juvenile proceeding. It adds a step through which the parties can lodge a mutual request that the juvenile court modify the adult sentence. The amendment is also remedial in that the change allows the juvenile court more latitude with regard to the adult sentence thereby potentially lessening harsh results of the type in this case. Accordingly, the 2010 amendment should be applied to I.A. [Citation omitted.]" *In re I.A.*, 2011 WL 3250584, at *7.

We find that the court's reasoning in *In re I.A.* about retroactively applying the 2010 amendment to K.S.A. 38-2364 also applies to the 2016 amendment to the statute. A.D.T. committed his crime in 2008 and his case has been pending since that year. Had

33

his revocation hearing taken place after July 1, 2016, there is no question that both the 2010 amendment and the 2016 amendment to K.S.A. 38-2364 would have applied at the hearing. Likewise, A.D.T. is entitled to receive the benefit of the amendment which became effective during his direct appeal. See *McAlister*, 310 Kan. at 91. We conclude the 2016 amendment to K.S.A. 38-2364(a)(2) was procedural or remedial in nature and applied retroactively to A.D.T.'s pending case on appeal. The district court erred as a matter of law by finding otherwise. Based on this erroneous legal conclusion, the district court found—without engaging in any further analysis—that Erickson was not ineffective by failing to argue that the amendment applied to A.D.T.'s case.

Given that the 2016 amendment to K.S.A. 38-2364(a)(2) applies to A.D.T.'s case, the district court must reevaluate A.D.T.'s claim to determine (1) whether Erickson's representation fell below an objective standard of reasonableness, considering all the circumstances, when she failed to argue on appeal that A.D.T. was entitled to relief under the amended statute and, if so (2) whether A.D.T. was prejudiced by Erickson's deficient performance. These are fact-intensive questions that must be resolved by the district court and cannot be decided as a matter of law based on the appellate record before us. See *State v. Salary*, 309 Kan. 479, 483-84, 437 P.3d 953 (2019). Once the district court makes a proper determination of the claimed ineffective assistance of counsel, the district court's findings of fact and conclusions of law are subject to review on appeal. See *State v. Gleason*, 277 Kan. 624, 644, 88 P.3d 218 (2004).

CONCLUSION AND REMAND ORDER

We conclude the district court did not err in finding that Erickson was not ineffective in failing to raise the constitutional challenges to the revocation of A.D.T.'s juvenile sentence and the imposition of his hard 25 adult sentence. As for the final ineffective assistance of counsel claim, we conclude the district court erred as a matter of law by finding that the 2016 amendment to K.S.A. 38-2364(a)(2) did not apply

34

retroactively to A.D.T.'s case. This error tainted the district court's analysis of the ineffective assistance of counsel claim. As a result, the district court's judgment on the final ineffective assistance of counsel claim is reversed and the case is remanded for the district court to make additional findings.

More specifically, the district court must reevaluate A.D.T.'s final ineffective assistance of counsel claim to determine (1) whether Erickson's representation fell below an objective standard of reasonableness, considering all the circumstances, when she failed to argue on appeal that A.D.T. was entitled to relief under the amended statute and, if so, (2) whether A.D.T. was prejudiced by Erickson's deficient performance. The district court may consider additional relevant evidence on this claim if either party wants to present more evidence. If the district court finds that A.D.T. is entitled to relief on this claim under K.S.A. 60-1507, the district court shall determine the appropriate relief to be granted which may include setting aside the district court's final order for execution of adult sentence dated November 6, 2015.

Affirmed in part, reversed in part, and remanded with directions.